No. 80-75

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

IN THE MATTER OF R.P.S.

Appeal from: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone.
Honorable Diane G. Barz, Judge presiding.

Counsel of Record:

For Appellant:

Harold Hanser, County Attorney, Billings, Montana
Robert J. Waller argued, Deputy County Attorney,
Billings, Montana

For Respondent:

Olsen, Christensen and Gannett, Billings, Montana
Damon L. Gannett argued, Billings, Montana

Submitted: May 29, 1980

Decided: JUN 24 1980

Filed: JUN 24 1980

Thomas J. Kearney
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

The State initiated this action on November 15, 1979, by filing a petition in Youth Court, Yellowstone County, alleging R.P.S. was a delinquent by having committed the crimes of deliberate homicide and sexual intercourse without consent. On November 26, 1979, counsel for R.P.S. filed a motion to suppress a confession made by R.P.S. and all physical evidence related to the confession. A hearing on the motion was held the next day. R.P.S. presented evidence in support of the motion including a psychological evaluation. The State was given time to present rebuttal testimony and was granted permission to have an independent examination of R.P.S. The State presented its rebuttal testimony on December 17, 1979. The testimony included a psychiatric evaluation of R.P.S.

The Youth Court, the Honorable Diane G. Barz presiding, subsequently entered an order granting the motion to suppress the confession and all physical evidence derived as a result of the confession. The court found the evidence should be suppressed because R.P.S. was incapable of making a knowing and intelligent waiver of his constitutional rights at the time of the confession and because law enforcement personnel had failed to comply with Montana's Youth Court Act by obtaining a waiver of rights from R.P.S.'s parents prior to the confession. The State brings this appeal from the order of the Youth Court.

On November 14, 1979, R.P.S. went to the Yellowstone County sheriff's office at the request of a sheriff's officer. R.P.S. was 18 years old on that date, having turned 18 on October 19, 1979. The alleged offenses contained in

the petition filed in this case occurred on October 9, 1979, before R.P.S. was 18.

R.P.S. arrived at the sheriff's office at about 7:00 p.m. Between 7:00 p.m. and approximately 11:30 p.m. that evening, R.P.S. was interviewed several times by sheriff's officers. He also took a polygraph examination. R.P.S. signed several waiver of rights forms and a consent form for the polygraph test during the evening. R.P.S. confessed to the crimes charged during the interview sessions. The following day he accompanied officers to the scene of the crimes and assisted them in locating several pieces of physical evidence connected with the crimes.

At the direction of Yellowstone County attorney Harold Hanser, the sheriff's officers interviewing R.P.S. treated him as an adult. They did not, therefore, gain a waiver of rights form from his parents as required by the Montana Youth Court Act. See section 41-5-303, MCA. In fact, R.P.S.'s mother called the sheriff's office several times during the interview sessions. Each time officers told her she could not talk to R.P.S.

Two expert witnesses testified at the suppression hearing concerning psychological evaluations they had performed of R.P.S. Dr. Ned Tranel testified that R.P.S. was schizophrenic. Dr. Tranel stated that because of his mental condition, there was a high probability that R.P.S. could not understand the abstract terms contained in the Miranda warnings or understand the consequences of making statements to the officers after being advised of his rights. Dr. Tranel was of the opinion that R.P.S. was incapable of making a knowing and intelligent waiver of his constitutional rights at the time he allegedly did so.

Dr. Bryce Hughett also testified as to the mental condition of R.P.S. Dr. Hughett found no evidence of thought disorder present. He stated that R.P.S. was capable of understanding the Miranda warnings and of making a knowing and intelligent waiver of his rights at the time the officers interviewed him.

The State raises the following issues on appeal:

1. Did the Youth Court err in finding that R.P.S. was incapable of voluntarily waiving his constitutional rights?

2. Did the Youth Court err in suppressing the confession and all evidence obtained as a result of the confession because law enforcement personnel did not treat R.P.S. as a youth and obtain a waiver of rights from his parents?

Addressing the first issue, we note that the rules governing the review of a lower court's determination of the voluntariness of a confession are well established in Montana. The issue of voluntariness is largely a factual determination for the trial court. The trial court's judgment will not be disturbed on appeal unless it is clearly against the weight of the evidence. State v. Blakney (1979), __ Mont. ___, 605 P.2d 1093, 1096, 36 St.Rep. 2193, 2196; State v. Grimestad (1979), __ Mont. ___, 598 P.2d 198, 202, 36 St.Rep. 1245, 1251. As we stated in Grimestad:

> ". . . the standard to be applied by the trial judge on a suppression question is 'preponderance of the evidence', but when the same question comes to us on appeal the credibility of the witnesses and the weight to be given their testimony is for the trial court's determination and our review is limited to determining whether there is substantial credible evidence supporting the District Court's findings." 598 P.2d at 203, 36 St.Rep. at 1251.

Under this standard, we must examine the record for substantial credible evidence to support the trial court's

decision. The evidence that supports the decision is found mainly in the testimony of Dr. Tranel. Dr. Tranel testified that R.P.S. suffered from a severe emotional disturbance technically diagnosed as schizophrenic reaction, acute undifferentiated type. Dr. Tranel stated one consequence of R.P.S.'s emotional disturbance was a severely impaired ability to form logical conclusions, understand cause-effect relationships and concentrate. Dr. Tranel said this resulted in R.P.S.'s normal functioning being similar to that of a person in a dream. A second feature of R.P.S.'s emotional disturbance, according to Dr. Tranel, was a disconnection between his emotion and the idea associated with it. As an example of this feature of R.P.S.'s disorder, Dr. Tranel said R.P.S. may not have the unpleasant feeling normally associated with experiencing an unpleasant event. Beyond the schizophrenic condition, Dr. Tranel testified that R.P.S. had a low level of ego strength. The doctor said this meant that R.P.S. would "come apart quite easily" under stress. Based on this diagnosis, Dr. Tranel stated he did not think R.P.S. could have understood the Miranda warnings given to him, especially at the end of over four hours of interrogation.

There is conflicting evidence on the record. Dr. Hughett testified that R.P.S. showed no signs of schizophrenia when he interviewed him. Dr. Hughett also stated that the results of one of the tests administered by Dr. Tranel indicated R.P.S. was consciously or unconsciously attempting to make his mental condition appear worse than it was.

In resolving this conflict in the testimony, the trial court assessed the testimony of Dr. Hughett as follows:

"Dr. Hughett, through his testimony, failed to convince the Court that the youth in question was not suffering from any mental defect, which would have impaired his ability to make an intelligent, voluntary waiver of his rights."

As pointed out above, the determination of the credibility of the witnesses is for the trial court.

Thus, the following situation exists here. Two experts testified as to the mental condition of R.P.S. Their testimony conflicted. The trial court found the testimony of the expert who found R.P.S. capable of voluntarily waiving his rights unconvincing and based its decision on the testimony of Dr. Tranel set out above. We have reviewed Dr. Tranel's testimony. It is very thorough and definitely supports the conclusion that R.P.S. was incapable of voluntarily waiving his constitutional rights. Further, according to the trial court, Dr. Tranel's testimony is more credible than Dr. Hughett's testimony. Dr. Tranel's testimony, therefore, represents substantial credible evidence on the record to support the decision of the trial court. As such, we affirm the order of the trial court suppressing R.P.S.'s confession and all physical evidence obtained as a result of the confession because R.P.S. did not make a voluntary waiver of his rights.

Having determined the evidence in question must be suppressed because R.P.S. did not voluntarily waive his constitutional rights, it is unnecessary to consider the second issue raised by the State.

Affirmed.

_John Conway Harrison_
Justice

-6-

We concur:

_____
Chief Justice

_____

_____

_____
Justices