80-325

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

_____

IN THE MATTER OF R.P.S.

_____

Appeal from:  District Court of the Thirteenth Judicial District,
              In and for the County of Yellowstone, Montana
              Honorable Diane G. Barz, Judge presiding.

Counsel of Record:

    For Appellant:

        Stacey and Jarussi, Billings, Montana
        Calvin J. Stacey argued, Billings, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Mark J. Murphy argued, Assistant Attorney General,
        Helena, Montana

        Harold F. Hanser, County Attorney, Billings, Montana
        Robert P. Morin argued, Deputy County Attorney,
        Billings, Montana

                            _____

                            Submitted:  January 19, 1981

                            Decided:  February 18, 1981

Filed:FEB 18 1981


_____
                                    Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

R.P.S. appeals from two orders of the District Court of Yellowstone County, sitting as the Youth Court: (1) denying suppression of alleged incriminatory statements made by R.P.S. relating to a homicide, (2) transferring the prosecution of R.P.S. from Youth Court to the adult criminal court (i.e. the District Court). We affirm both orders.

On November 10, 1979, the body of a 16-year-old female was found in an area southwest of the Billings KOA Campground. An autopsy revealed that the victim had been sexually assaulted and had died by strangulation. On November 14, the sheriff's office received information that R.P.S. had burned the victim's car. The office contacted R.P.S. who voluntarily came to the sheriff's office without his parents, waived his Miranda rights, and allegedly confessed during questioning.

R.P.S. was 10 days short of his 18th birthday on the date of the alleged crimes, but was 18 years old at the time of the interrogation leading to his alleged confession on November 14.

On November 15, a petition was filed in the Youth Court alleging that R.P.S. was a delinquent youth by reason of having committed the offenses of deliberate homicide and sexual intercourse without consent. The following day the State moved to transfer the case to the District Court in order to prosecute R.P.S. as an adult. Ten days later R.P.S. filed a motion to suppress the alleged confession or admission and all physical evidence directly relating thereto.

On December 17, while incarcerated in the Yellowstone County jail, R.P.S. made a phone call to his friend L.S. who was having a party at his home. During the course of the conversation, L.S. asked R.P.S. if he really did it and R.P.S. replied "Yeah." R.P.S. then related some of the circumstances surrounding the offenses. The law enforcement officers were not aware of this alleged confession to L.S. until January 26,

shortly after they had resumed their investigation.

On January 21, 1980, following a hearing, the Youth Court, the Honorable Diane G. Barz presiding, entered an order suppressing the alleged confession and all physical evidence derived therefrom on two grounds: (1) that law enforcement officers failed to obtain a waiver from R.P.S.'s parents prior to questioning him as is required when questioning a youth pursuant to section 41-5-303, MCA, and (2) that R.P.S. did not make a knowing, intelligent and voluntary waiver of his constitutional rights at the time of the alleged questioning and confession because of his incapacity to do so. On appeal we affirmed on the second ground. In the Matter of R.P.S. (1980), ___Mont.___, 613 P.2d 999, 37 St.Rep. 1083.

Thereafter on July 1, 1980, the State moved to set for hearing its motion to transfer the case from the Youth Court to the District Court. On July 9, R.P.S. filed another motion to suppress directed at evidence he anticipated would be offered at the transfer hearing, specifically the alleged confession R.P.S. made to L.S. during the phone call of December 17 and all physical evidence derived therefrom. A consolidated hearing on the two motions was held on July 14 in Youth Court.

On August 4, the Youth Court entered its findings of fact, conclusions of law, memorandum and order: (1) denying R.P.S.'s motion to suppress, and (2) transferring the case from the Youth Court to the District Court for prosecution of R.P.S. as an adult. R.P.S. now appeals from these two orders. Following the State's motion to expedite the hearing and the filing of written statements of fact by opposing counsel, we granted the State's motion and heard the appeal on January 19, 1981.

R.P.S. has been incarcerated in the Yellowstone County jail continuously since November 14, 1979.

On appeal, R.P.S. advances two principal arguments supporting suppression of the alleged confession of December 17.

- 3 -

First he argues that his alleged confession of December 17 to his friend L.S. was the result of his invalid and suppressed confession of November 14 to law enforcement officers; hence the alleged confession of December 17 is "fruit of the poisonous tree" and inadmissible under Silverthorne Lumber Co. v. United States (1920), 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed 319, and its progeny. Secondly, R.P.S. contends that the alleged confession of December 17 is inadmissible because once he confessed on November 14, he "let the cat out of the bag" and any subsequent confession made under virtually the same conditions should be excluded. According to R.P.S., there was not a sufficient break in the chain of events to remove the primary taint of the first confession and "put the cat back in the bag," citing United States v. Bayer (1947), 331 U.S. 532, 67 S.Ct. 1394, 91 L.Ed.2d 1654 and related cases.

The State, on the other hand, contends that the information leading to the discovery of the alleged confession to L.S. came from an independent source unrelated to the first inadmissible and suppressed confession of November 14; hence the second confession is untainted by the first and is not subject to suppression as "fruit of the poisonous tree." The State further argues that the second alleged confession is not rendered inadmissible under the "cat out of the bag" doctrine because the totality of circumstances surrounding the second confession demonstrates that it was voluntary and sufficiently attenuated from the first to remove any taint.

We find that the fruit of the poisonous tree doctrine does not prevent the use of the second confession. The information leading to the discovery of the second confession came from an independent source, and thus the confession was cleansed of any "primary taint."

The "fruit of the poisonous tree" doctrine, as part of the exclusionary rule, was first discussed by the United States

- 4 -

Supreme Court in Silverthorne Lumber Co. v. U.S. (1920), 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed 319. It forbids the use of evidence which comes to light as a result of the exploitation of an initial illegal act of the police. Silverthorne, supra, 251 U.S. at 392, 40 S.Ct. at 183, 64 L.Ed at 321. But in Silverthorne and in later cases, the Court made it clear that all evidence obtained as the result of an initial illegality does not become forever unavailable or inaccessible. Certain conditions can purge the evidence of its "primary taint." The Supreme Court said in Wong Sun v. United States (1963), 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441:

> "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'"

371 U.S. at 488, 83 S.Ct. at 417, 9 L.Ed.2d at 455.

If the same facts are discovered by the State from an independent source, such evidence may be found to be cleansed of any taint and becomes "unpoisoned." Silverthorne, supra, 251 U.S. at 392, 40 S.Ct. at 183, 64 L.Ed at 321. Such evidence can be used in court or can be used to obtain additional information. The question in the present case, then, is whether the information leading to the questioning of L.S., which resulted in the discovery of the second confession, was sufficiently independent to render the second confession admissible.

The homicide was discovered on November 10, 1979. An entry in the investigating detective's file, dated November 11, 1979, contained the name of L.S., indicating that L.S. was a friend of the victim. R.P.S. was arrested and confessed on November 14, 1979, and in that confession mentioned that L.S. was a friend of his. On November 17, 1979, one of the other detec-

tives received information that a student (B.M.) was talking about the homicide at high school. B.M. was interviewed on November 26, and at that time B.M. indicated that prior to R.P.S.'s arrest, R.P.S. had given some information concerning the murder to L.S. and B.M. L. S. was interviewed for the first time on January 26.

On November 26, R.P.S. filed his motion to suppress his November 14 confession. On December 17, R.P.S. gave his second confession to L.S. On January 21, the trial court held the first confession inadmissible, and the State began its investigation anew. The December 17 confession was revealed in the January 26 interview of L.S.

Detective Newell testified that he began his second investigation on the basis of the entries in his file referring to L.S. He testified that he did not utilize the reference to L.S. contained in R.P.S.'s first confession in seeking out L.S., nor did he recall even being aware of that reference.

In summmary, his testimony indicated that even if the name of L.S. came to light as a result of an initial illegality, this same information was discovered independently, three days prior to the giving of the invalid confession. Thus we do not consider the evidence to be the product of any exploitation of a prior illegality, and we find it to be admissible.

We need not make the finding which the State urges this Court to make, that there was no police misconduct and therefore no "taint" associated with the initial confession. Because the independent source doctrine allows the use of the confession in this case, we need not determine what degree of police misconduct, ranging from intentional to inadvertent, serves to taint the evidence, for purposes of invoking the protections of the "fruits" doctrine.

Appellant next argues that the second confession must be suppressed because of the "cat out of the bag" doctrine. The

trial judge rejected this argument, finding that there was "a clear showing the second statement was voluntarily made and was sufficiently insulated and disassociated from the first statement to avoid any taint." We find substantial evidence to support that finding and affirm the District Court's ruling that the second confession is admissible.

Justice Jackson first formulated "the cat out of the bag" doctrine in 1947, in United States v. Bayer (1947), 331 U.S. 532, 67 S.Ct. 1394, 91 L.Ed.2d 1654. It is applied in cases in which an inadmissible confession is obtained, and subsequently defendant makes a further confession. State v. Allies (1980), ____ Mont.____, ____P.2d____, 37 St.Rep. 2089, 2098. The United States Supreme Court explained the doctrine:

> "Of course, after an accused has once let the cat out of the bag by confessing, no matter what the inducement, he is never thereafter free of the psychological and practical disadvantages of having confessed. He can never get the cat back in the bag. The secret is out for good. In such a sense, a later confession always may be looked upon as fruit of the first. But this Court has never gone so far as to hold that making a confession under circumstances which preclude its use, perpetually disables the confessor from making a useable one after those conditions have been removed."

United States v. Bayer, supra, 331 U.S. at 540-541, 67 S.Ct. at 1398, 91 L.Ed at 1660.

This Court endorsed this doctrine in its December 31, 1980, opinion in State v. Allies, supra, finding in that case that Allies' later statements were inadmissible because there was not a "'break in the stream of events . . . sufficient to insulate the final events from the effect of all that went before.'" Whether or not the "causative link" between the two confessions has been broken sufficiently to remove the taint must be determined on a case-by-case basis, and the burden is on the State to show that the second statement is not tainted by the prior invalid confession or statement. Allies, supra, ____Mont. at ____, ____ P.2d at____, 37 St.Rep. at 2099.

In making our finding in Allies, we looked at the

- 7 -

circumstances surrounding each confession in determining whether the conditions which served to invalidate the first confession carried over to make the second one likewise inadmissible. Specifically, we considered the passage of time, the change in location, the manner of interrogation, whether there was representation by counsel, and the defendant's mental condition. Allies, supra, ____Mont. at ____, ____P.2d at ____, 37 St.Rep. at 2098-2099. In Allies, we found that the continuous incarceration and the frequent persistent questioning (42 times) by Allies' girlfriend throughout the six-week period mandated a finding that there was an insufficient break in the causative chain.

In addition to the factors we considered in Allies, we find several other factors cited by other jurisdictions to be relevant in making a determination in this case: police conduct, opportunity to talk with family and friends, and whether the defendant is in a position to believe that his first confession has made his present position hopeless. Comm. v. Meehan (1979), ____Mass. ____, 387 N.E.2d 527, 537, cert. dismissed, 445 U.S. 39, 100 S.Ct. 1092, 63 L.Ed.2d 185; Knott v. Howard (1st Cir. 1975), 511 F.2d 1060, 1061.

R.P.S. first confessed in the sheriff's office while being questioned about the burning of the victim's car. Thirty-three days later, he confessed again, this time while incarcerated in the Yellowstone County jail. The first confession was made during an interrogation by the State; the second came during a phone call which R.P.S. voluntarily made to L.S., and about which the State had no knowledge. The second confession was not the result of persistent questioning as in Allies; L.S. testified that during the phone call, he asked R.P.S. if he had done it, and R.P.S. replied, "Yeah," and then gave details. Police misconduct, if any, appears to have been inadvertent at the first confession; police were not present and had no knowledge of the second confession until a month after it was made. R.P.S. had

appointed counsel prior to making the second confession and had appeared in court with counsel in order to get his first confession suppressed. R.P.S. was aware, then, at the time of the second confession that there was a decision pending which could put the "cat back in the bag." R.P.S.'s family appears to have been supportive and came to see him at least 18 times between the arrest and the second confession.

These factors, when taken as a whole, indicate that there was a significant break in the chain of events which purged any taint from the second confession. Admittedly, R.P.S., like Allies, was incarcerated throughout the period, but this factor alone does not require suppression of the second statement. Additionally, appellant argues that R.P.S.'s mental condition precluded his ever making any admissible statements concerning the alleged crimes, once he had confessed. We disagree.

At the hearing to suppress the first confession, Dr. Tranel, who had conducted a psychiatric examination of R.P.S., testified that R.P.S. could not understand the "abstract terms" contained in the Miranda warning. He concluded therefore that R.P.S. could not make a knowing, voluntary and intelligent waiver of his rights. After considering his testimony and other conflicting testimony, the district judge found that "it is impossible to make a factual determination that the youth in this case made a knowing, intelligent and voluntary waiver of his constitutional rights." We affirmed that finding of the District Court on the first appeal. In the Matter of R.P.S., supra.

At the hearing on the motion to suppress the second confession, R.P.S. made no allegation that he was suffering from any mental illness on December 17 which would invalidate his confession, and there was no evidence introduced with respect to his mental condition. The finding that R.P.S. was incapable of waiving his Miranda rights on November 14 was simply not relevant to a consideration of the circumstances of the December 17

confession, because there was no question of waiver involved in the second confession. The second confession was made voluntarily to a nonpolice person, a situation which does not require any understanding of, nor waiver of, the Miranda rights. In contrast to the Allies situation, in which Allies was found to be mentally ill during both time periods, R.P.S. was found only to be incapable of waiving his rights in making his first confession. This fact is insufficient to justify a finding that R.P.S. was mentally incapable of making a later, voluntary statement to a friend who was outside of jail.

The district judge found that the second confession was voluntarily made and sufficiently disassociated from the first to be admissible. As this finding is supported by substantial credible evidence, we will not disturb it.

We affirm the order of the Youth Court finding the second confession admissible and transferring the case to the District Court.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

- 10 -