No. 91-290

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

THE STATE OF MONTANA,

  Plaintiff and Appellant,

-vs-

LARRY T. MOORE,

  Defendant and Respondent.

FILED

OCT - 8 1991

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Larry Moran, Judge presiding.


COUNSEL OF RECORD:

  For Appellant:

    Marc Racicot, Attorney General, Helena, Montana;
Elizabeth Griffing, Assistant Attorney General,
Helena, Montana; Robert Brown, Assistant Attorney
General, Bozeman, Montana; Mike Salvagni, County
Attorney, Bozeman, Montana; Marty Lambert, Deputy
County Attorney, Bozeman, Montana.

  For Respondent:

    James H. Goetz and Brian K. Gallik, Goetz, Madden
& Dunn, Bozeman, Montana; Larry Jent, Williams,
Jent & Dockins, Bozeman, Montana.


      Submitted on briefs: September 5, 1991

          Decided: October 8, 1991

Filed:

_____
      Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

On December 17, 1990, the State of Montana filed an Information in the District Court for the Eighteenth Judicial District in Gallatin County, charging defendant Larry Moore with Deliberate Homicide. On February 8, 1991, the State amended its Information to add two counts of Tampering With or Fabricating Evidence. Moore then moved to suppress two taped interviews with law enforcement officers. On April 12, 1991, the District Court granted Moore's motion in part. The court reserved its ruling, however, on whether the State could use the suppressed evidence for impeachment. The State appeals the order of the District Court. We affirm.

The issues are:

1. Did the District Court err in suppressing all reference in a legal interview to Moore's statements in an earlier illegal interview?

2. Did the District Court err in refusing to rule on whether the State could use the suppressed evidence for impeachment?

Brad Brisbin, a resident of West Yellowstone, disappeared on November 9, 1990. The State's search for Brisbin focused on Moore, who was the last person known by authorities to have seen Brisbin alive.

Members of the Gallatin County Sheriff's Office interviewed Moore on November 23, 1990. Moore was alone, unaccompanied by counsel. The officers informed Moore of his rights under *Miranda v.*

2

*Arizona* (1966), 384 U.S. 436, 86 S.Ct 1602, 16 L.Ed.2d 694. As required by *Miranda*, the officers told Moore that he had the right to remain silent, that anything he said could be used against him, that he had the right to a retained or appointed attorney, and that he could stop talking and assert his rights at any time.

The officers then began the interview by telling Moore they had a search warrant for his camper and wanted him to tell them what they would find in it. Almost immediately Moore attempted to exercise his Fifth Amendment right to terminate the interview, but the questioning continued. Later in the interview, Moore specifically asked to talk to an attorney. The questions continued.

After this second unsuccessful attempt to invoke his Fifth Amendment rights, Moore told the officers that he had shot a rat in his camper and suggested that they would find bullet holes and possibly bullet fragments when they searched the camper. He also offered to give the authorities the pistol he used to shoot the rat. Later Moore asked a third time for an attorney. The interview ended after this third attempt by Moore to assert his Fifth Amendment rights.

A West Yellowstone police officer then drove Moore home, retrieved the pistol, and left. Later that night, Moore voluntarily returned to the West Yellowstone police station in search of personal property he had left in the patrol car. When Moore arrived at the police station, Gallatin County Sheriff Ron

3

Cutting continued to question him about the rat shooting story. Sheriff Cutting did not re-issue the *Miranda* warnings. The sheriff asked Moore to diagram the rat shooting incident, and Moore complied.

On December 1, 1990, the authorities interviewed Moore again. This time Moore was accompanied by counsel. No Fifth Amendment violations are alleged to have occurred during this third interview. Pursuant to his attorney's advice, Moore admitted that he had lied about shooting rats in his camper. He explained that he had found Brisbin in the camper, armed with a pistol and in a suicidal state. Moore said he and Brisbin wrestled for the gun and it discharged, grazing Brisbin's head and wounding him superficially. According to Moore, Brisbin made him promise not to tell anyone what had happened. He left to get water to clean Brisbin up and when he returned, Brisbin was gone.

Moore's motion to suppress included the November 23, 1990, interview, the pistol, the rat shooting diagram, and the December 1, 1990, interview. The State opposed that motion, but asked the court to rule specifically that any evidence suppressed from the State's case in chief would still be admissible for impeachment. The court suppressed all of the November 23, 1990, interview, the diagram, and any reference in the December 1, 1990, interview to the illegal November 23, 1990, interview. The court took the matter of impeachment under advisement.

4

# I

Did the District Court err in suppressing all reference to the illegal November 23, 1990, interview in the subsequent legal December 1, 1990, interview?

The State does not contest the suppression of the November 23, 1990, interview. That interview is clearly inadmissible because the interrogating officers did not respect Moore's assertion of his Fifth Amendment rights. *See Edwards v. Arizona* (1981), 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378. Instead, the State argues that *all* of the December 1, 1990, interview is admissible, *including* the references to the November 23, 1990, interview.

In discussing the December 1, 1990, interview, the District Court ruled:

> It cannot be said this interrogation was "fruit of the poisoned tree," i.e., the interview of November 23, 1990: the matters discussed were not identical; there was no indication Defendant labored under any mental difficulties; Defendant had counsel in attendance; and there was no justification for Defendant to feel he was in a hopeless position. Therefore, the tests of *State v. Allies*, [190 Mont. 475,] 621 P.2d 1080 (1980) and *In the Matter of RPS*, [191 Mont. 275,] 623 P.2d 964 (1981) are met, and this interrogation is admissible evidence. However, any reference[] in this interrogation to any matter within the November 23, 1990 interrogation . . . is tainted and must remain inadmissible.

The District Court was correct: nothing in the December 1, 1990, interview other than the references to the November 23, 1990, interview could have been fruit of the poisoned tree. We hold, however, that under the facts of this case, references to the

5

November 23, 1990, interview are simply inadmissible in their own right, without reference to the poisoned tree doctrine.

We are aware of the "independent source" exception to the fruit of the poisoned tree doctrine. In *Wong Sun v. United States* (1963), 371 U.S. 471, 487-88, 83 S.Ct. 407, 417 9 L.Ed.2d 441, 455, the United States Supreme Court said:

> We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means <u>sufficiently distinguishable</u> to be <u>purged of the primary taint</u>." [Emphasis added.]

In *In re R.P.S.* (1981), 191 Mont. 275, 623 P.2d 964, we noted that the following factors are relevant to determining whether derivative evidence has been "purged of the primary taint": passage of time, change in location, manner of interrogation, representation by counsel, defendant's mental condition, police conduct, opportunity to talk with family and friends, and whether the defendant believes the first confession or admission has made the defendant's present position hopeless. *R.P.S.*, 623 P.2d at 968. The State argues that the presence of several of these factors in this case purges the taint of the November 23, 1990, *Miranda* violations and renders the December 1, 1990, interview admissible in its entirety.

The State misapprehends the problem. References to the November 23, 1990, interview are not "fruit" of the poisoned

6

tree--they *are* the poisoned tree itself. Law enforcement officers violated Moore's Fifth Amendment rights. The exclusionary rule dictates that the product of those violations is inadmissible. It makes no sense to suppress the November 23, 1990, interview and then admit that evidence by allowing reference to it in another discussion.

Moore's December 1, 1990, admission that he lied on November 23, 1990, did not occur in a vacuum. Any mention at trial of the rat shooting story, or even Moore's own admission that he had lied earlier in the investigation of the case, would inevitably resurrect the suppressed November 23, 1990, interview itself. Thus, questions of "independent sources" and "sufficiently distinguishable approaches" are irrelevant to this particular fact situation. We hold that the District Court was correct in suppressing all references to the November 23, 1990, interview from the December 1, 1990, interview.

## II

Did the District Court err in refusing to rule on the admissibility of the suppressed evidence for the purpose of impeachment?

The State asked the District Court to rule specifically that it could use Moore's November 23, 1990, statements for impeachment, despite the suppression of those statements from its case in chief.

7

In the District Court, the State cited *Oregon v. Hass* (1975), 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570, and *State v. Cartwright* (1982), 200 Mont. 91, 650 P.2d 758, for the proposition that impeachment is a collateral use to which the exclusionary rule does not apply. The District Court took the matter under advisement.

The State now asks this Court to intervene and rule on the basis of *Hass*, *Cartwright*, and the limited pre-trial record in this case that the evidence is admissible for impeachment purposes. Moore, on the other hand, asks us to intervene on his behalf by rejecting the federal and state cases on independent and adequate state grounds.

Essentially both parties ask us to compel the District Court to rule on this issue prior to trial. We decline that invitation. The impeachment issue is not properly before us until the District Court has entered a ruling.

The State argues that the District Court's refusal to rule on this issue deprived it of its right to appeal suppression rulings under § 46-20-103, MCA. That statute provides:

> **Scope of appeal by state.** (1) Except as otherwise specifically authorized, the state may not appeal in a criminal case.
> (2) The state may appeal from any court order or judgment the substantive effect of which results in:
>     (a) dismissing a case;
>     (b) modifying or changing the verdict . . .;
>     (c) granting a new trial;
>     (d) quashing an arrest or search warrant;
>     (e) <u>suppressing evidence</u>;
>     (f) <u>suppressing a confession or admission</u>;
>     (g) granting or denying change of venue; or

8

> (h) imposing a sentence that is contrary to law.
> [Emphasis added.]

Section 46-20-103, MCA. We note that nothing in this statute expressly guarantees the State the right to have the District Court enter its suppression ruling in time to perfect an appeal.

In anticipation of this problem the State cites the following language in *State v. Carney* (1986), 219 Mont. 412, 418, 714 P.2d 532, 536:

> The objection was sustained by the District Court. These facts do not suggest a plain and obvious case warranting an appeal, nor do they describe an urgent circumstance. The prosecution had an adequate opportunity to present the question of admissibility in a pre-trial motion. <u>They did not exercise that choice.</u> [Emphasis added.]

From this language the State concludes that it is entitled to a pre-trial ruling any time it presents pre-trial motions on admissibility. However, we note that this was *dicta*, and that we did not indicate that the State could appeal from such an order. Furthermore, rulings on impeachment evidence cannot, by their nature, always be made prior to trial.

Moore, by contrast, likens the State's pre-trial motion in the District Court to a motion in limine. We agree. The power to grant or deny such motions lies within the sound discretion of the District Court. *See Wallin v. Kinyon Estate* (1974), 164 Mont. 160, 519 P.2d 1236. In the instant case the District Court held that:

> [I]t is far too early to decide what evidence may be used to impeach a witness who is not required to testify, and who may not testify. That matter is better left to the time of trial, and is considered as "under advisement."

We hold that this was within the scope of the District Court's discretion and that the District Court did not abuse that discretion.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

October 8, 1991

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Hon. Marc Racicot, Attorney General
Elizabeth Griffing, Asst. Atty. Gen.
Justice Building
Helena, MT 59620

Mike Salvagni, Gallatin County Attorney
Marty Lambert, Deputy County Attorney
615 S. 16th Ave., Room 100
Bozeman, MT 59715

Larry Jent
WILLIAMS, JENT & DOCKINS
506 E. Babcock
Bozeman, MT 59715

James H. Goetz and Brian K. Gallik
GOETZ, MADDEN & DUNN
35 N. Grand
Bozeman, MT 59715

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
      Deputy