No. 95-361

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

STATE OF MONTANA,

      Plaintiff and Respondent,

  v.

DOUGLAS LEROY NEW,

      Defendant and Appellant.

FILED

JUN 04 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Fourth Judicial District,
                In and for the County of Missoula,
                The Honorable John W. Larson, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

        Marcia M. Jacobson, Public Defender Office,
        Missoula, Montana

      For Respondent:

        Hon. Joseph P. Mazurek, Attorney General,
        John Paulson, Assistant Attorney General,
        Helena, Montana

        Robert L. Deschamps, III, Missoula County
        Attorney, Karen Townsend, Deputy County
        Attorney, Missoula, Montana


Submitted on Briefs: May 2, 1996

Decided: June 4, 1996

Filed:

_____
          Clerk

Justice Charles E. Erdmann delivered the opinion of the Court.

Douglas Leroy New appeals from an opinion and order partially denying his motion to suppress evidence and from the judgment entered by the Fourth Judicial District Court, Missoula County, convicting him of the offenses charged. We affirm.

The issue on appeal is whether the District Court erred in denying New's motion to suppress evidence obtained during a search of his vehicle by New's probation officer.

FACTS

Shortly before midnight on May 24, 1994, Missoula County Sheriff's Deputy Pat Turner was on patrol in Missoula and observed a pickup truck driving at a slow rate of speed. Turner saw the vehicle make two turns without signaling and called his dispatcher to run a check on the license plate number. The dispatcher informed Turner that the vehicle belonged to New and that New was on probation for possession of drugs with intent to sell and was subject to "search on demand."

Turner continued to follow the vehicle as it turned into a convenience store. As he went to stop New for the traffic violation, Turner noticed another vehicle drive past him without its headlights on. As he went to stop the second vehicle, Turner saw New get out of his pickup and approach the public telephone outside the convenience store. After dealing with the second vehicle, Turner returned to speak with New who was still on the telephone.

2

Turner told New that he had observed him make two turns without signaling. Turner informed New that he knew he was on probation and was subject to search and then directed him to empty his pockets onto the hood of his pickup. Turner also performed a quick pat-down search of New and discovered a small metal tubular container inside his pants pocket. Inside the container were a number of small plastic bags containing a white powdery substance which New claimed was cocaine obtained from a friend's house. Turner then placed New under arrest and continued to search New's clothing. He found an after-shave box in New's coat pocket which contained approximately twenty-nine long white pills which were later determined to be Lortab, a dangerous drug. New was taken to the county jail and his vehicle was impounded.

In the early morning hours of May 25, 1994, Turner notified New's probation officer, Tom Forsyth, of the arrest and Forsyth requested a report of the arrest and directed that New also be arrested for violating his probation. Later that same day, New was interviewed on tape by Missoula County Sheriff's Detective Larry Jacobs. During that interview, Jacobs informed New that the white powdery substance had tested positive for methamphetamine. New indicated that he intended to sell some of the drugs to pay his distributor and to support his own habit. During the interview, New gave his consent to search his pickup and admitted to the officers that they would find drugs and drug paraphernalia in the vehicle.

Following the interview, Jacobs discussed the matter with a deputy county attorney who advised Jacobs not to rely on New's consent for the search of his vehicle but to contact Forsyth to determine if he had independent grounds to search the vehicle. Jacobs contacted Forsyth who determined that a probationary search of the vehicle was appropriate. Forsyth had previously received information that New was using drugs and alcohol, he knew that New was not in the court-ordered drug/alcohol treatment program and he was uncertain of New's living arrangements--all of which led Forsyth to believe he had independent grounds to search New's vehicle and that such a search might produce evidence indicating a probation violation. Forsyth and Jacobs subsequently searched New's vehicle and discovered a pill bottle containing a number of baggies with a white powdery substance which later tested positive for methamphetamine. They also recovered drug paraphernalia from the pickup.

On June 6, 1994, New was charged by information with felony criminal possession of dangerous drugs (methamphetamine) with intent to sell pursuant to § 45-g-103, MCA (Count I), felony criminal possession of dangerous drugs (Lortab) pursuant to § 45-g-102, MCA (Count II), and misdemeanor criminal possession of drug paraphernalia in violation of § 45-10-103, MCA (Count III). New entered pleas of not guilty to the charges.

On September 2, 1994, New filed a motion to suppress the evidence obtained during both the search of his person and the

4

search of his vehicle. On November 30, 1994, the District Court issued an opinion and order granting New's motion to suppress the evidence seized during the search of his person but denied the motion as to evidence seized during the search of his vehicle. The District Court held that probationary searches are within the discretion of the probation officer and found that in this case Forsyth did not abuse his discretion in scheduling the search of New's vehicle.

On January 17, 1995, the District Court allowed New to withdraw his pleas of not guilty and to enter a conditional plea of guilty to Counts I and III pursuant to § 46-12-204(3), MCA, reserving the right to appeal the suppression order as it related to the evidence seized during the search of his vehicle.[1] As it was evident that New would appeal the suppression order relating to the vehicle search, the State then requested that the District Court allow it to enter testimony from Forsyth into the record concerning the specific reasons why he conducted the search of New's vehicle. The District Court granted the State's request and both parties were allowed to examine Forsyth. Following Forsyth's testimony, the court determined that its earlier ruling on New's motion to suppress would stand.

On May 5, 1995, the District Court rendered its judgment sentencing New to fifteen years in the Montana State Prison on each

---

[1] Count II was no longer at issue since the District Court had suppressed the evidence supporting that charge in its November 30, 1994, opinion and order.

of Counts I and II, and to a term of six months in the Missoula County Jail on Count III.[2] The sentences were to run concurrently but the District Court suspended the entire sentence on certain **terms** and conditions. This appeal followed.

STANDARD OF REVIEW

The standard of review for a district court's denial of a motion to suppress is whether the court's findings of fact are clearly erroneous and whether those findings were correctly applied as a matter of law. State v. Williams (Mont. 1995), 904 P.2d 1019, 1021, 52 St. Rep. 1085, 1086 (citing State v. Flack (1993), 260 Mont. 181, 188, 860 P.2d 89, 94). In this case and at New's request, the District Court ruled on the motion to suppress without conducting an evidentiary hearing or relying on a stipulation of facts from the parties. The court based its initial ruling on the briefs submitted by the parties and stated that the facts concerning the two searches were not in dispute. However, after the District Court received Forsyth's testimony concerning the basis for the vehicle search the court made a factual determination that its earlier ruling would stand in light of the new evidence obtained from Forsyth. Thus, despite the fact that no formal findings of fact were made on the matter, we must nevertheless determine whether the District Court's findings are clearly

---

[2] The District Court's judgment erroneously referred to Count II and this error will be addressed later in the opinion.

6

erroneous and whether they were correctly applied as a matter of law.

## DISCUSSION

Did the District Court err in denying New's motion to suppress evidence obtained during a search of his vehicle by New's probation officer?

In denying New's motion to suppress the evidence obtained during the search of his vehicle, the District Court concluded that a probation officer is not required to have a prearranged schedule for his or her searches. The court noted that such searches lie within the discretion of the probation officer and in this case the court was persuaded by the fact that Forsyth had authorized and conducted the search himself and that the information he had at the time constituted reasonable grounds under State v. Small (1989), 235 Mont. 309, 767 P.2d 316.

New relies on Wong Sun v. United States (1963), 371 U.S. 471, **83 s. ct. 407,** 9 L. Ed. 2d 441, to argue that since the District Court determined that the search of his person was illegal, the evidence obtained during Forsyth's subsequent search of the vehicle was "fruit of the poisonous tree" and should have been suppressed as well. He **claims** that without the illegal search and seizure, he would not have been arrested, booked, or interrogated, nor would he have made incriminating statements or consented to the search of his vehicle. New notes that after the illegal search and seizure Jacobs contacted Forsyth to determine if he (Forsyth) had

independent grounds for the vehicle search. However, according to NW?, such after-the-fact justification of the vehicle search does not cleanse the evidence of the taint created by the illegal search of his person.

The State counters New's reliance on the "fruit of the poisonous tree" doctrine by arguing that certain conditions can purge such derivative evidence of its primary taint and allow the evidence to be used despite any initial illegality. The State maintains that Forsyth had information which he acquired prior to and independent of Turner's search of New's person and that the evidence obtained during the probationary search of New's vehicle was therefore "unpoisoned" and purged of any taint created by the initial illegal search.

The State also argues that a degree of flexibility must be accorded a probation officer in the course of supervising a probationer. The State argues that a probation officer may search a probationer's vehicle without a warrant as long as the officer has a reasonable suspicion of a probation violation. The State maintains that the operation of a probation system and its need for supervision of a probationer's conditional liberty presents special needs beyond normal law enforcement that justify departure from the usual warrant and probable cause requirements.

We must initially address the propriety of the January 17, 1995, change of plea hearing where the District Court granted the State's request, over New's objection, to illicit testimony from

8

Forsyth concerning his reasons for authorizing the search of New's vehicle. While New does not appeal the District Court's decision to allow Forsyth's testimony, he states in his reply brief that, "Mr. Forsyth's testimony was not used by the lower court in making its suppression decision. Furthermore, the contents of that transcript do not change anything about this appeal."

We agree that the District Court initially ruled on New's motion to suppress prior to hearing Forsyth's testimony. However, in deciding to allow the testimony the court stated Forsyth's **testimony** might assist the court and the Supreme Court in resolving the matter. Following the testimony, the District Court determined that "its earlier ruling would stand." We therefore conclude that the District Court did, in fact, use Forsyth's testimony in reaching its final decision on the matter.

We further note that without the benefit of Forsyth's testimony this Court would have been required to remand the case for a factual hearing to determine Forsyth's reasons for conducting the search of New's vehicle. We also note that in briefing the matter before the District Court, New did not contest the State's assertion that Forsyth had **a legitimate** basis for the probationary search, stating only that the defense had no information to indicate Turner contacted Forsyth prior to the search. Thus, we conclude that the District Court properly allowed Forsyth's testimony at the January 17, 1995, hearing and we consider the transcript from that hearing to be part of the record on appeal.

Even though Forsyth claims he had independent reasons for searching New's vehicle, he acknowledges the fact that the telephone call from Jacobs was an additional element supporting the search. We must therefore determine whether the evidence obtained during the search of the vehicle was the result of the illegal search of New's person or if, instead, it was obtained by means sufficiently distinguishable from the illegal search to be purged of the primary taint.

In In re R.P.S. (1981), 191 Mont. 275, 623 P.2d 964, this Court examined the "fruit of the poisonous tree" doctrine first discussed by the U.S. Supreme Court in Silverthorne Lumber Co. v. United States (1920), 251 U.S. 385, 40 S. Ct. 182, 64 L. Ed. 319. The doctrine forbids the use of evidence which comes to light as a result of the exploitation of an initial illegal act of the police. In re R.P.S., 623 P.2d at 967 (citing Silverthorne, 251 U.S. at 392). However, we also noted that the U.S. Supreme Court has made it clear that all evidence obtained as the result of an initial illegality does not become forever unavailable or inaccessible and that certain conditions can purge the evidence of its "primary taint." In re R.P.S., 623 P.2d at 967. The U.S. Supreme Court stated in Wong Sun that:

> We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means

sufficiently distinguishable to be purged of the primary taint."

Wong Sun, 371 U.S. at 487-88 (citation omitted).

We reviewed the exceptions to the "fruit of the poisonous tree" doctrine in State v. Pearson (1985), 217 Mont. 363, 704 P.2d 1056, and stated that derivative evidence is admissible if it is (1) attenuated from the constitutional violation so as to remove its primary taint; (2) obtained from an independent source; or (3) determined to be evidence which would have been inevitably discovered apart from the constitutional violation. Pearson, 704 P.2d at 1058-59. The U.S. Supreme Court has discussed the "independent source" exception more recently in Murray v. United States (1988), 487 U.S. 533, 108 S. Ct. 2529, 101 L. Ed. 2d 472, and stated that:

> "[T]he interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a *worse*, position that they would have been in if no police error or misconduct had occurred. . When the challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been in absent any error or violation."

Murray, 487 U.S. at 537 (quoting Nix v. Williams (1984), 467 U.S. 431, 443).

Forsyth testified that New had failed to report to him for several months, was reported to be using drugs and alcohol, had failed to pay his fine or enroll himself into chemical dependency treatment, and had moved several times without approval or notification. All of these constitute violations of New's parole

11

conditions.  Forsyth testified that he had intended to search New's vehicle on May 24, 1994, but New did not have his pickup with him when Forsyth saw him.  When Forsyth saw New's vehicle on May 25, 1994, it appeared that New was living out of his pickup, thus giving Forsyth an additional reason to search the vehicle. Forsyth testified as follows:

> Q.  Can you tell the Court whether you were able to make a decision about the search independent of what was found by Deputy Turner?
>
> A.  Absolutely.  Yes.
>
> . . . .
>
> Q.  You wouldn't have searched his vehicle on May 25th unless you would have gotten a call from that officer; is that true?
>
> A.  A search of Mr. New was imminent regardless. I think that was just one more, ah, factor that -- that factored into my decision.  He hadn't been reporting like I said.

When asked about his conversation with Jacobs, Forsyth stated:  "I think he asked me if I had any plans to do a search.  I indicated that I did . . ."

In Small we stated that "[t]he probation officer must be able to supervise the probationer, and upon his judgment and expertise, search the probationer's residence or cause it to be searched." Small, 767 P.2d at 318 (quoting State v. Burke and Roth (1988), 235 Mont. 165, 171, 766 P.2d 254, 257).  The terms of New's probation included the requirement that New would submit to the search of his person, vehicle, and/or residence upon the reasonable request of his probation officer.  Forsyth had independent grounds for

12

searching New's vehicle, his request was reasonable based on the information he had at the time, and the timing of the search was within his discretion as New's probation officer.

A criminal defendant who seeks to suppress evidence has the burden of proving that the search was illegal. State v. McCarthy (1993), 258 Mont. 51, 55, 852 P.2d 111, 113. We conclude that New failed to establish that Forsyth's probationary search of his vehicle was not based on reasonable cause arising from information Forsyth had acquired from independent sources. The evidence obtained during the search of the vehicle was not the result of the exploitation of the illegal search but rather was based on information known to Forsyth which was independent of the fact that New had been arrested and illegally searched the previous day. We therefore hold that the District Court's findings are not clearly erroneous and that those findings were correctly applied as a matter of law to deny New's motion to suppress the evidence obtained from the search of his vehicle.

Finally, the State did not appeal the District Court's order suppressing the evidence obtained during the search of New's person which supported Count II. However, the District Court's judgment states as follows:

> IT IS THE JUDGMENT OF THE COURT that DOUGLAS LEROY NEW be and DOUGLAS LEROY NEW is hereby sentenced to a term of fifteen (15) years each on Count I and II in the Montana State Prison in Deer Lodge, Montana, and to a term of six (6) months on Count III in the Missoula County Jail in Missoula, Montana. Said sentences shall run concurrently with each other.

13

During the January 17, 1995, change-of-plea hearing the following exchange took place which conflicts with the court's judgment:

> THE COURT: Mr. Beccari, do you know of any facts [that] should be made known to [the] Court prior to the acceptance of a plea of guilty in this matter?
>
> MR. BECCARI: No, sir, and I believe it's a plea of guilty to Counts I and III; is that correct? I guess we should clarify that beforehand. It's Count II that the Court has ordered suppressed.
>
> THE COURT: That's the State's understanding?
>
> MS. TOWNSEND: Yes.
>
> THE COURT: Okay. So as to I and III of the Information filed June 6, 1994, you desire to change your plea --
>
> NEW: Yes.
>
>     .   .   .
>
> THE COURT: You stand convicted of the offenses of criminal possession of dangerous drugs with intent to sell, a felony, [Count 11 and criminal possession of drug paraphernalia, a misdemeanor [Count 1111.

We therefore note the clerical error in the District Court's judgment convicting New of Count II and sentencing him to fifteen years in the Montana State Prison for that offense. The evidence supporting the charge was suppressed and Count II should have therefore been dismissed. Thus, pursuant to this Court's authority under § 46-20-703(1), MCA, we modify the District Court's judgment and sentence removing the reference to Count II, felony criminal possession of dangerous drugs (Lortab) pursuant to § 45-p-102, MCA.

Affirmed.

_____
                                           Justice

14

we concur:

_____

_____

_____
    Justices

Justice W. William Leaphart, dissenting.

I dissent from the majority's holding that "[t]he evidence obtained during the search of the vehicle was not the result of the exploitation of the illegal search but rather was based on information known to Forsyth which was independent of the fact that New had been arrested and illegally searched the previous day." The District Court and the majority recognize that the search of New's person was illegal. Nonetheless, the majority holds that the subsequent search of New's vehicle was obtained by means sufficiently distinguishable from the illegal search to be purged of the primary taint. I disagree that the vehicle search was not derived by exploitation of the illegal search. I also disagree that the vehicle search was arrived at by means sufficiently distinguishable to be purged of the primary taint. Wong Sun v. United States (1963), 371 U.S. 471, 487-88, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, 455. Additionally, I disagree that the vehicle search was: (1) attenuated from the constitutional violation so as to remove its primary taint; (2) obtained from an independent source; or (3) determined to be evidence which would have been inevitably discovered apart from the constitutional violation. State v. Pearson (1985), 217 Mont. 363, 366, 704 P.2d 1056, 1058-59.

On May 25, 1995, the day after New's arrest, upon the recommendation of a Deputy County Attorney, Detective Jacobs contacted New's parole officer, Tom Forsyth. Subsequently, on the same day, Forsyth conducted a search of New's pickup truck and found drugs and drug paraphernalia. The State argues that even if the initial search of New's person were illegal, the drugs in New's

16

vehicle arose from an independent source based on the information Forsyth had prior to New's arrest. However, Forsyth admitted that he would not have been in a position to search New's truck if he had not received a call from the officers involved in its seizure. New's vehicle was impounded and available to search because of the initial illegal search.

According to the State, a probationary search was imminent at the **time** of New's arrest. However, Forsyth testified that he had seen New in his office the day before New's arrest and that, at that time, Forsyth did not search New's pickup. Forsyth testified that he could not recall clearly whether New had the truck with him that day or not. Clearly, a search of the truck had not been foremost on Forsyth's mind if he could not recall if it were available for searching on May 24, 1995. Forsyth's notes from the May 24 meeting make no indication that Forsyth intended to search New's home or truck at any future time. It is very unlikely that Forsyth would have searched New's vehicle the morning of May 25 had the police not illegally seized the truck and contacted Forsyth.

Additionally, the reasons that Forsyth offered in support of his alleged intent to search New's truck, i.e., that New failed to report to him for several months (although he had seen New the day before, May 24), was reported to be using drugs and alcohol, failed to pay his fine or enroll himself into chemical dependency treatment, and had moved several times without approval or notification, do not lead to the conclusion that a search of New's truck would have been inevitable or a priority. The fact that New was living out of his truck was not revealed until after New's

17

arrest and the truck's seizure. His living in the truck was clearly an after-the-fact rationalization for searching the truck. The District Court's conclusion that probation officers are not required to have prearranged schedules for searches of probationers' persons or possessions does not adequately excuse the obvious causal relationship between the illegal search of New's person, the notification of Forsyth, and Forsyth's search of the truck.

The District Court noted that:

Here the Probation Officer also received information interviewed [sic] by Missoula County Sheriff's Detective indicating the presence of small amounts of drugs and illegal drug paraphernalia in the Defendant's vehicle which are prohibited under Defendant's probation.

The information mentioned by the District Court was obtained by Detective Jacobs during his interview of New after the illegal search of New's person. Thus, Forsyth relied on tainted custodial admissions in ascertaining that there was adequate "reasonable suspicion" to search New's vehicle.

This Court examined the doctrine of the "fruit of the poisonous tree" as part of the exclusionary rule in Matter of R.P.S. (1981), 191 Mont. 275, 623 P.2d 964. First discussed by the United States Supreme Court in Silverthorne Lumber Co. v. United States (1920), 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319, the doctrine forbids the use of derivative evidence which comes to light as a result of the exploitation of an initial illegal act. The search of New and the seizure of New's pickup truck were the initial illegal acts. The notification to Forsyth and his subsequent search of the truck were derivative in nature. That is,

18

the search of the truck by Forsyth was an exploitation of the illegal search and seizure by Officer Turner.

This Court reviewed the exception to the "fruit of the poisonous tree" rule in <u>Pearson,</u> 704 P.2d at 1058-59. We noted that derivative evidence is admissible if it is: (1) attenuated from the constitutional violation so as to remove its primary taint; (2) obtained from an independent source; or (3) determined to be evidence which would have been inevitably discovered apart from the constitutional violation. Given the consumable and vendable nature of the drugs, it was far from *inevitable* that they would have remained in the truck to be discovered when, and if, the truck were to be searched at a later time.

The State's reliance on both independent grounds and inevitable discovery seem too convenient as after-the-fact justifications for searching the truck. I would hold that Forsyth's probationary search of New's *truck* was an exploitation of the illegal search of New's person and seizure of his truck, and was not based on information known to Forsyth independently of the fact that New had been arrested and illegally searched the previous night.

_____
Justice

Justices William E. Hunt, Sr., and Terry N. Trieweiler join in the foregoing dissenting opinion.

_____

_____
Justices

19