JUSTICE LEAPHART,
dissenting.
I dissent from the majority’s holding that “[t]he evidence obtained during the search of the vehicle was not the result of the exploitation of the illegal search but rather was based on information known to Forsyth which was independent of the fact that New had been arrested and illegally searched the previous day.” The District Court and the majority recognize that the search of New’s person was illegal. Nonetheless, the majority holds that the subsequent search of New’s vehicle was obtained by means sufficiently distinguishable from the illegal search to be purged of the primary taint. I disagree that the vehicle search was not derived by exploitation of the illegal search. I also disagree that the vehicle search was arrived at by *539 means sufficiently distinguishable to be purged of the primary taint. Wong Sun v. United States (1963), 371 U.S. 471, 487-88, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, 455. Additionally, I disagree that the vehicle search was: (1) attenuated from the constitutional violation so as to remove its primary taint; (2) obtained from an independent source; or (3) determined to be evidence which would have been inevitably discovered apart from the constitutional violation. State v. Pearson (1985), 217 Mont. 363, 366, 704 P.2d 1056, 1058-59.
On May 25, 1995, the day after New’s arrest, upon the recommendation of a Deputy County Attorney, Detective Jacobs contacted New’s parole officer, Tom Forsyth. Subsequently, on the same day, Forsyth conducted a search of New’s pickup truck and found drugs and drug paraphernalia. The State argues that even if the initial search of New’s person were illegal, the drugs in New’s vehicle arose from an independent source based on the information Forsyth had prior to New’s arrest. However, Forsyth admitted that he would not have been in a position to search New’s truck if he had not received a call from the officers involved in its seizure. New’s vehicle was impounded and available to search because of the initial illegal search.
According to the State, a probationary search was imminent at the time of New’s arrest. However, Forsyth testified that he had seen New in his office the day before New’s arrest and that, at that time, Forsyth did not search New’s pickup. Forsyth testified that he could not recall clearly whether New had the truck with him that day or not. Clearly, a search of the truck had not been foremost on Forsyth’s mind if he could not recall if it were available for searching on May 24, 1995. Forsyth’s notes from the May 24 meeting make no indication that Forsyth intended to search New’s home or truck at any future time. It is very unlikely that Forsyth would have searched New’s vehicle the morning of May 25 had the police not illegally seized the truck and contacted Forsyth.
Additionally, the reasons that Forsyth offered in support of his alleged intent to search New’s truck, i.e., that New failed to report to him for several months (although he had seen New the day before, May 24), was reported to be using drugs and alcohol, failed to pay his fine or enroll himself into chemical dependency treatment, and had moved several times without approval or notification, do not lead to the conclusion that a search of New’s truck would have been inevitable or a priority. The fact that New was living out of his truck was not revealed until after New’s arrest and the truck’s seizure. His living *540 in the truck was clearly an after-the-fact rationalization for searching the truck. The District Court’s conclusion that probation officers are not required to have prearranged schedules for searches of probationers’ persons or possessions does not adequately excuse the obvious causal relationship between the illegal search of New’s person, the notification of Forsyth, and Forsyth’s search of the truck.
The District Court noted that:
Here the Probation Officer also received information interviewed [sic] by Missoula County Sheriff’s Detective indicating the presence of small amounts of drugs and illegal drug paraphernalia in the Defendant’s vehicle which are prohibited under Defendant’s probation.
The information mentioned by the District Court was obtained by Detective Jacobs during his interview of New after the illegal search of New’s person. Thus, Forsyth relied on tainted custodial admissions in ascertaining that there was adequate “reasonable suspicion” to search New’s vehicle.
This Court examined the doctrine of the “fruit of the poisonous tree” as part of the exclusionary rule in Matter of R.P.S. (1981), 191 Mont. 275, 623 P.2d 964. First discussed by the United States Supreme Court in Silverthorne Lumber Co. v. United States (1920), 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319, the doctrine forbids the use of derivative evidence which comes to light as a result of the exploitation of an initial illegal act. The search of New and the seizure of New’s pickup truck were the initial illegal acts. The notification to Forsyth and his subsequent search of the truck were derivative in nature. That is, the search of the truck by Forsyth was an exploitation of the illegal search and seizure by Officer Turner.
This Court reviewed the exception to the “fruit of the poisonous tree” rule in Pearson, 704 P.2d at 1058-59. We noted that derivative evidence is admissible if it is: (1) attenuated from the constitutional violation so as to remove its primary taint; (2) obtained from an independent source; or (3) determined to be evidence which would have been inevitably discovered apart from the constitutional violation. Given the consumable and vendable nature of the drugs, it was far from inevitable that they would have remained in the truck to be discovered when, and if, the truck were to be searched at a later time.
The State’s reliance on both independent grounds and inevitable discovery seem too convenient as after-the-fact justifications for searching the truck. I would hold that Forsyth’s probationary search of New’s truck was an exploitation of the illegal search of New’s person *541 and seizure of his truck, and was not based on information known to Forsyth independently of the fact that New had been arrested and illegally searched the previous night.
JUSTICES HUNT and TRIEWEILER join in the foregoing dissenting opinion.