No. 14210

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

JAMES DOUGLAS KIRKALDIE,

Defendant and Appellant.

Appeal from: District Court of the Fourth Judicial District,
Honorable Edward T. Dussault, Judge presiding.

Counsel of Record:

For Appellant:

Morales, Volinkaty and Harr, Missoula, Montana
Julio Morales argued and Arthur B. Harr argued, Missoula, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Mike McGrath argued, Assistant Attorney General, Helena, Montana
Robert L. Deschamps, III argued, County Attorney, Missoula, Montana

Submitted: September 12, 1978

Decided: OCT 3 0 1978

Filed: OCT 3 0 1978

Thomas J. Kearney
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Defendant appeals from his conviction of negligent homicide following a jury trial in the District Court of Missoula County.

Defendant is James Douglas Kirkaldie, the driver of a 1972 Buick Skylark in which a passenger, 15 year old Douglas Schaffer, was killed. The accident occurred on April 24, 1977, between midnight and 1:00 a.m. on Interstate 90 approximately one and one-half miles west of the Reserve Street exit near Missoula, Montana. Defendant's automobile left the pavement, went onto the median, and rolled over several times, throwing defendant, the deceased, and another passenger, 15 year old Jay Bush, out of the car. They were taken by ambulance to St. Patrick's Hospital where Douglas Schaffer died about 1:25 a.m.

Following a coroner's inquest, defendant was charged with negligent homicide and entered a plea of not guilty. A jury trial was held in the District Court of Missoula County commencing on November 10, 1977, which resulted in a verdict of guilty. Defendant was sentenced to a term of 10 years in the State Prison which he is presently serving.

The uncontradicted testimony indicates that during the evening defendant and the two 15 year old boys, Schaffer and Bush, were at a party at another's trailer home at the Skyline Trailer Court west of Missoula. Defendant admits drinking a half pint of vodka and 2 or 3 beers there. Defendant and the two boys left about 11:00 p.m. in defendant's car to go to Lolo, Montana to pay a $5.00 debt defendant owed Joe Mandala who ran a restaurant there.

From this point on, two sharply differing versions of the facts emerged at the trial. According to Jay Bush, defendant drove erratically to the Midi Mart store where defendant

purchased a six pack of beer. Defendant started to drive the car again but at the insistence of Doug Schaffer, defendant allowed Schaffer to drive to Lolo. Bush testified that he and Schaffer each had one can of beer while defendant consumed the other four cans.

According to Bush, when defendant went in and came out of Mandala's restaurant in Lolo, he was staggering. Defendant would not let Schaffer drive, and defendant's driving was erratic on the return trip. After arriving in Missoula, they proceeded along Reserve Street and onto the freeway. They passed another car on the on-ramp, entered the freeway and proceeded west.

About a mile and a half down the freeway on a slight curve, defendant's car drifted off the pavement, into the gravel on the shoulder, and onto the median. According to the highway patrolman, the car was travelling at a speed of at least 80 miles an hour, rolled over five times, and travelled over 200 yards from the point it left the pavement to where it started to roll.

Defendant denied stopping at the Midi Mart for beer on the way to Lolo. He denied drinking anything after they left the trailer house at 11:00 p.m. He denied that Schaffer drove from the Midi Mart to Lolo. Both he and the Mandalas denied that he was intoxicated or staggering at the latter's restaurant in Lolo.

On the return trip, defendant admitted passing a car on the ramp to Interstate 90. He testified that when he got on the freeway he was travelling about 60 miles an hour. As he was approaching the scene of the accident, he started to pass a pickup truck. It began moving over into the passing lane and in an attempt to avoid it, his wheels hit the gravel shoulder pulling him onto the median and causing him to loose control of his car. Defendant consistently maintained he was not drunk.

When the highway patrolman arrived at the scene of the accident, he could smell alcohol on defendant's breath. He advised defendant of his constitutional rights. Although the officer felt defendant was intoxicated, he did not place him under arrest. The officer asked defendant to submit to a blood alcohol test. Defendant refused.

At the hospital, the officer again asked defendant to submit to a blood alcohol test. Defendant again refused. The deputy coroner made a similar request which defendant refused. The deputy coroner called the sheriff who was a neighbor and friend of defendant; he could not remember what the sheriff said to defendant, but did remember that the sheriff was concerned about defendant's condition. The deputy coroner also called the county attorney who advised him to get a blood sample. The deputy coroner again requested defendant to give a blood sample. Defendant again refused, explaining he was a diabetic and could not give blood.

The deputy coroner then talked to the attending physician in the emergency room at the hospital who advised him that defendant's diabetes would not interfere with his giving a blood sample. The coroner requested the doctor's help in obtaining a blood sample. The doctor talked to defendant about submitting to a blood test. The defendant then consented. A blood sample was drawn that revealed a blood alcohol level of 0.28. Defendant had not been arrested, a search warrant had not been obtained, and defendant had not signed a written consent form.

Prior to trial defendant moved to suppress the results of the blood alcohol test and for a change of venue. At the suppression hearing defendant contended his consent to having blood drawn was to check his blood sugar level of his diabetes, not for a blood alcohol test. Defendant also sought a change in the place of trial because of two newspaper articles in the Missoulian

which he claimed deprived him of a fair trial in Missoula
County. The District Court denied both motion.

Defendant advances four specifications of error in this
appeal:

(1) Failure to suppress the results of the blood alcohol
test.

(2) Denial of a change of venue.

(3) Error in jury instructions.

(4) Insufficient evidence to support his conviction.

The principle issue in this appeal is the trial court's
refusal to suppress the results of the blood alcohol test. De-
fendant argues that his consent to the test was not voluntary
but was the product of psychological coercion by the State. He
contends that the drawing of the blood from his body amounted to
an unlawful search and seizure prohibited by the State and Fed-
eral Constitutions.

At the outset, we observe that the admissibility of the
results of the blood alcohol test in this test is not based on
implied consent to the withdrawal of defendant's blood under the
implied consent law of this state. Section 32-2142.1, R.C.M.
1947. Instead, it is bottomed on the actual consent of the
defendant which he admits. The issue turns on whether defendant's
consent was voluntary of was coerced by psychological means.

The taking of a blood sample for a blood alcohol test
is a search and seizure subject to the protection of the Fourth
Amendment to the United States Constitution. Schmerber v. Cali-
fornia (1966), 384 U.S. 757, 86 S.Ct. 1826, 16 L Ed 2d 908. How-
ever, a search and seizure with the consent of defendant is not
prohibited. State v. Williams (1969), 153 Mont. 262, 455 P.2d
634.

In this state, evidence concerning the taking, analysis
and result of a blood sample taken from defendant with his con-

sent is admissible in evidence.  State v. Haley (1957), 132

Mont. 366, 318 P.2d 1084.  The consent must be voluntary with

voluntariness determined by an examination of all of the circum-

stances surrounding the consent.  Schneckloth v. Bustamonte

(1973), 412 U.S. 218, 93 S.Ct. 2041, 36 L Ed 2d 584.

According to defendant, the reason he refused the earlier

requests of the highway patrolman and the deputy coroner for a

blood sample was because he was a diabetic and could not give

blood.  He maintains that he was never told by the doctor that

the blood sample to which he ultimately consented was to be used

for legal purposes or that he could refuse to give a blood sample.

Defendant testified that when the doctor asked for a blood sample,

he simply "assumed" it was for a blood sugar test.  He admits

that the doctor discussed with him the legal ramifications of

refusing a blood alcohol test.

The doctor testified to a different version of his con-

versation with defendant.  The doctor, repeatedly testified that

he informed the defendant that the blood sample was not for

medical treatment.  He testified that he told defendant about

the legal ramifications of refusing a blood alcohol test, informed

defendant that refusal to submit to a blood alcohol test was

tantamount to an admission of intoxication under state law, and

that it was in his best interests to have this done.  The doc-

tor testified that he made it clear to defendant that he did

not have to give blood, but did not recall specifically and ex-

plicitly discussing that under state law, defendant was not

required to give a blood sample.

The credibility of the witnesses at a suppression hear-

ing is properly determined by the trial court that heard testimony

and observed the witnesses.  United States v. Owens (8th Cir. 1973),

472 F.2d 780, cert.den. 412 U.S. 951, 93 S.Ct. 3019, 37 L Ed 2d

1004.  In a suppression hearing, the trial court sits as a finder

of fact with power to resolve conflicts in the evidence. People v. Hill (1974), 117 Cal.Rptr. 393, 528 P.2d 1. Here the trial court resolved those conflicts against the defendant.

The trial court simply did not believe that defendant had not been advised that the blood was to be used for a blood alcohol test or that he could refuse to give a blood sample. Defendant admitted that the doctor did not tell him the blood was to be used for a blood sugar test or for medical purposes, but he simply "assumed" this. The doctor testified and defendant admitted that the doctor discussed the legal ramifications of refusing a blood alcohol test.

The fact that defendant first refused consent is not controlling. Davis v. United States, (1946), 328 U.S. 582, 66 S.Ct. 1526, 90 L.Ed. 1453. It is simply a circumstance to be considered along with all other circumstances in determining the voluntary or involuntary character of the consent. A consent to search is not subject to the strict standard that is applied to fair trial rights or confessions under Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L Ed 2d 694. The United States Supreme Court has expressed this distinction in this language:

> "Almost without exception, the requirement of a knowing and intelligent waiver has been applied only to those rights which the Constitution guarantees to a criminal defendant in order to preserve a fair trial.
>
> " . . .
>
> "The protections of the Fourth Amendment are of a wholly different order, and have nothing whatever to do with promoting the fair ascertainment of truth at a criminal trial. . . . [T]he Fourth Amendment protects the 'security of one's privacy against arbitrary intrusion by the police . . ..'" Schneckloth v. Bustamonte, supra.

There is substantial evidence that defendant was not psychologically coerced, tricked, or fraudulently influenced to give a blood sample for the purpose of a blood alcohol test.

There is substantial evidence that his consent was free and voluntary. The trial court committed no error in denying defendant's motion to suppress the results of the blood alcohol test.

Defendant next contends that denial of his motion for a change of venue constituted reversible error. He claims that news items in the Missoulian amounted to prejudicial pretrial publicity and denied him a fair trial. The objectionable features of the news items according to defendant were the report that defendant's blood alcohol tested three times greater than the statutory presumption that a person is under the influence of alcohol where his blood alcohol level tests 0.10; that the coroner's jury unanimously found that defendant was driving in a grossly reckless and culpable manner at the time of the accident; and that the county attorney's office indicated that perjury charges might be filed against defendant. The news items were attacked by an affidavit of one of defendant's attorneys that he believed defendant had been prejudiced by these news reports and would be unable to receive a fair trial in Missoula County.

Denial of a motion for change of venue is not reversible error in the absence of an abuse of discretion by the trial court. State v. Logan (1970), 156 Mont. 48, 573 P.2d 833; State v. Warrick (1968), 152 Mont. 94, 446 P.2d 916. Affidavits stating opinions and not facts do not constitute a showing of an abuse of discretion. State v. Barick (1964), 143 Mont. 273, 389 P.2d 170; State ex rel. Hanrahan v. Dist. Ct. (1965), 145 Mont. 501, 401 P.2d 770.

Here the news articles were published approximately six months prior to trial. There is nothing to indicate that any of the jurors had even read the articles. There is no showing that any juror was tainted or predisposed by the appearance of these

articles. Under such circumstances, the trial court did not abuse its discretion in denying a change of place of trial.

Defendant next argues that the jury was not properly instructed. His objections are mainly that three of his proposed instructions that he argues should have been given are instructions Nos. 7, 8 and 9.

Proposed instruction No. 7 is on involuntary intoxication. It reads:

> "An intoxicated person is criminally responsible for his conduct unless his intoxicated condition is involuntarily produced and deprives him of his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law."

The State objected to this instruction because defendant had not presented any evidence showing that his intoxication was "involuntarily produced". The court denied the instruction on this ground.

The trial court correctly refused this instruction. The record discloses no evidence of involuntary intoxication. No instruction may be given which is not supported either by some direct evidence or some logical inference from evidence presented at trial. State v. Miner (1976), 169 Mont. 260, 546 P.2d 252. Here there was none, so the proposed instruction was properly refused.

Proposed instruction No. 8 also dealt with intoxication. It reads:

> "An intoxicated condition may be taken into consideration in determining the existence of a mental state which is an element of the offense."

The State objected to this instruction on the ground that defendant's state of mind was not an issue in this case.

The defendant was charged with negligent homicide. Section 94-5-104, R.C.M. 1947, defines negligent homicide as criminal homicide which is committed negligently. Unlike deliberate homicide, which requires that the offense be committed purposely

- 9 -

or knowingly, negligent homicide does not require such purpose or knowledge. Negligent homicide only requires a gross deviation from a reasonable standard of care.

Criminal negligence can arise as a result of intoxication. Defendant's mental state at the time he was driving his car was not in issue. Issue was whether the driving of a car while intoxicated was a gross deviation from the standard of reasonable care. We find no error in the trial court's refusal of this proposed instruction.

Proposed instruction No. 9 dealt with proximate cause. It stated:

> "You are instructed that even if you believe the Defendant to have been driving at an excessive rate of speed and while intoxicated, nevertheless if you also find that the accident was caused by the Defendant's vehicle being forced off the pavement by another vehicle then you shall return a verdict of not guilty."

This instruction dealt with defendant's theory of how the accident happened. The State objected to this instruction on the ground the other instructions given the jury adequately covered the issues raised in this instruction.

The jury was adequately instructed on reasonable doubt and the elements of the offense charged. Under the given instructions, if the jury believed defendant's account of the accident, they could have found in his favor. However, it was the jury's duty to determine which account of the accident, the State's or defendant's, they believed to be more credible and worthy of belief. State v. Lewis (1976), 169 Mont. 290, 546 P.2d 518. Where the jury is adequately instructed, no error occurs in refusing a proposed instruction which is already covered. Here the jury was fully instructed and defendant's attorney had a full opportunity to argue the merits of his defense. See State v. Smith (1975), 168 Mont. 93, 541 P.2d 351. We find no error here.

- 10 -

The final issue concerns the sufficiency of the evidence to sustain his conviction.

The jury is the fact-finding body and its decision is controlling. State v. Fitzpatrick (1973), 163 Mont. 220, 516 P.2d 605. Given the required legal minimum of evidence, we will not substitute our determination of the facts for that of the jury. State v. Merseal (1974), 167 Mont. 412, 538 P.2d 1366. If substantial evidence is found to support the verdict, it will stand. State v. McKenzie (1978), ____Mont.____, ____ P.2d____, 35 St.Rep. 759; State v. White (1965), 146 Mont. 226, 405 P.2d 761. In this case, the evidence shows that defendant was driving his car while intoxicated and it was because of his intoxication that the accident occurred resulting in the death of Douglas Schaffer. This constitutes substantial evidence supporting defendant's conviction.

We have examined all arguments and authorities advanced by defendant. None would change the result of this appeal. We find it unnecessary to comment on each in this opinion.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

Mr. Justice Daniel J. Shea dissents and will file a written dissent later.