No. 96-181

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


STATE OF MONTANA,

Plaintiff and Respondent,

v.

JAMES NELSON,

Defendant and Appellant.


APPEAL FROM:   District Court of the Seventh Judicial District,
In and for the County of Dawson,
The Honorable Dale Cox, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

Marvin L. Howe (argued); Simonton, Howe & Schneider,
Glendive, Montana

For Respondent:

Hon. Joe Mazurek, Attorney General; John Paulson, Assistant
Attorney General (argued), Helena, Montana

Scott W. Herring, Deputy County Attorney, Glendive, Montana



Submitted: May 1, 1997

Decided:  June 24, 1997
Filed:


_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

James Nelson (Nelson) appeals from the Seventh Judicial District Court's order denying his motion to quash or to suppress the results of his blood alcohol test obtained by means of an investigative subpoena. We affirm.

The following facts are not in dispute. On December 7, 1994, near Glendive, Montana, Nelson was involved in a motor vehicle accident on Interstate 94 when he drifted off the highway and struck a guardrail. After Nelson received a ride from the accident scene to a friend's residence, Nelson's friend, Mr. Stroh, drove him to the Glendive Medical Center for treatment of facial injuries he sustained in the accident.

Emergency room physician Dr. Arthur Fink treated Nelson for a broken jaw and, concerned over Nelson's apparent lack of pain for the injury, ordered a blood test in order to determine his blood alcohol concentration level (BAC).

The following morning, Nelson reported the accident to the Montana Highway Patrol. Highway Patrol Sergeant Jerry Mahlum (Sgt. Mahlum), a Certified Accident Reconstructionist, conducted the investigation of the accident. Sgt. Mahlum viewed the scene of the accident, determined the extent of damage to the guardrail, spoke with the patrolman on duty the night of the accident and independently met with Nelson and Dr. Fink. During Sgt. Mahlum's interview with Nelson, he learned that Nelson had broken his jaw in the accident and that it had to be wired shut as a result. Nelson told Sgt. Mahlum that prior to the accident he had consumed a couple of drinks at a local bar and that he had no recollection of the accident itself. In addition, Sgt. Mahlum determined that Nelson's vehicle had sustained extensive left front-end damage, the type of damage consistent with striking the guardrail. Sgt. Mahlum's findings led him to believe that the driver involved in the accident would have either fallen asleep at the wheel or would have been under the influence of drugs or alcohol.

On December 12, 1994, Sgt. Mahlum met with Dr. Fink. During the interview, and without divulging Nelson's BAC level, Dr. Fink told Sgt. Mahlum that Nelson's BAC level the night of the accident would partly explain Nelson's lack of pain normally associated with his type of injuries.

After Sgt. Mahlum compiled the findings of his investigation, Deputy County Attorney Scott Herrin, reviewed Sgt. Mahlum's report and determined that sufficient facts existed to suggest an "unlawful activity had occurred" and, on December 14, 1994, filed a Motion for Investigative Subpoena Duces Tecum with the District Court. Setting forth

the facts recited above, the motion requested that the District Court issue an investigative
subpoena to the records keeper at the Glendive Medical Center to require disclosure of
all medical records pertaining to Nelson's BAC taken December 7, 1994. On December 16, 1994, the District Court found that sufficient facts were present and granted the motion to issue the Investigative Subpoena Duces Tecum. On January 3, 1995, the medical reports on Nelson's blood test from December 7, 1994, were provided to the deputy county attorney showing that, shortly after his accident, Nelson's BAC level was .233.

Nelson was charged by Complaint with the offense of driving under the influence of alcohol, a misdemeanor, in violation of 61-8-401, MCA. Nelson entered a plea of not guilty in Justice Court. Nelson then filed a motion to suppress evidence which was denied by the Justice Court. Nelson then entered a plea of guilty reserving his right to appeal the denial of the motion to suppress to the District Court.

Nelson then appealed to District Court where he filed a Motion to Quash the Investigative Subpoena or, in the alternative, Motion to Suppress Evidence. After entertaining oral argument on the motion, the District Court denied the motion with no findings of fact or conclusions of law. Thereafter, Nelson entered a plea of not guilty and judgment was entered sentencing him to ten days in the Dawson County jail and a fine of $500. The sentence was stayed pending appeal to the Montana Supreme Court.

Nelson appealed to this Court and we remanded to the District Court for further proceedings on the question of whether the State had established a compelling state interest justifying the discovery of the BAC test, as required under Article II, Section 10 of the Montana Constitution. Pursuant to this remand order, the District Court conducted a hearing and filed Findings of Fact and Conclusions of Law and Judgment.

The District Court concluded that: (1) a health care provider may disclose health information about a patient without the patientþs authorization if the disclosure is made pursuant to 50-16-530, MCA, which allows for disclosure þto a law enforcement officer about the general physical condition of a patient being treated in a health care facility if the patient was injured on a public roadway or was injured by the possible criminal act of another . . . . þ Section 50-16-530(4), MCA. Further, the court recognized that health care information may be disclosed by a health care provider pursuant to 50-16-535(1)(j), MCA, when "the health care information is requested pursuant to an investigative subpoena issued under 46-4-301."

Section 46-4-301, MCA, provides the authority for the issuance of investigative subpoenas, as follows:

Whenever a prosecutor has a duty to investigate alleged unlawful activity, any justice of the supreme court or district court judge of this state may cause subpoenas to be issued commanding the persons to whom they are directed to appear before the prosecutor and give testimony and produce

books, records, papers, documents, and other objects as may be necessary
and proper to the investigation.  A subpoena may be issued only when it
appears upon the affidavit of the prosecutor that the administration of justice
requires it to be issued.

In the instant case, the Dawson County Attorney, relying on Sgt. Mahlumþs
investigation, filed a motion for an investigative subpoena to the Glendive Medical
Center
for release of reports of Nelson's blood alcohol level relative to the time of the
accident.
The District Court found that the "administration of justice" required the subpoena
be
issued.  Pursuant to the subpoena, the County Attorney received Nelsonþs blood
alcohol
results from the Glendive Medical Center.

Questions Presented
We phrase the issues on appeal as follows:
1.   Did the taking of a blood sample from Nelson violate his constitutional
rights to be free from unreasonable searches?

2.   Did the information provided to Sgt. Mahlum by Dr. Fink exceed the
provisions of   50-16-530(4), MCA?

3.   Did release of the blood alcohol information pursuant to an investigative
subpoena violate Nelsonþs right of privacy under Article II, Section 10 of the
Montana
Constitution?

Discussion
We review a district courtþs denial of a motion to suppress to ascertain whether
the courtþs factual findings are clearly erroneous and whether the findings were
correctly
applied as a matter of law.  State v. Arthun (1995), 274 Mont. 82, 906 P.2d 216.
1.  Did the taking of a blood sample from Nelson violate his constitutional
rights
to be free from unreasonable searches?

Nelson contends that, since his blood was drawn at the hospital at a time when
law
enforcement was not involved, the implied consent law,  61-8-402(1), MCA, does not
apply.  He contends, nonetheless, that since the blood was taken by a doctor without
first
seeking Nelsonþs consent, that the taking constitutes an illegal search and the
results must
be suppressed.  He cites State v. Kirkaldie (1978), 179 Mont. 283, 587 P.2d 1298, in
support of his contention.
In Kirkaldie, the investigating officer and the deputy coroner asked the
defendant
to submit to a blood alcohol test and the defendant refused.  The coroner then
requested
the assistance of the attending physician who testified that he advised Kirkaldie

that he did not have to give blood but that it was in his best interest that he do so. Kirkaldie, 587 P.2d at 1302. Kirkaldie eventually agreed to the drawing of his blood. He then argued on appeal that his consent was the involuntary product of psychological coercion by the State. Kirkaldie, 587 P.2d at 1302. We reviewed the voluntariness issue under the þtotality of circumstancesþ test and found substantial evidence to support the trial courtþs conclusion that the defendant was not coerced into consenting to the test. Kirkaldie, 587 P.2d at 1303.

The instant case is clearly distinguishable from Kirkaldie. Here, in contrast to Kirkaldie, there was no State involvement in the taking of the blood sample. The blood was drawn by a doctor at the Glendive Medical Center. The exclusionary rule, which Nelson seeks to invoke, does not apply to evidence resulting from the actions of private individuals unless they are acting as agents of the State. State v. Christensen (1990), 244 Mont. 312, 797 P.2d 893; see also State v. Baker (1995), 272 Mont. 273, 283, 901 P.2d 54, 60. Here, there is no suggestion or argument that Dr. Fink, in drawing blood from Nelson, was acting at the direction or request of the State. In the absence of any State action or involvement, Nelsonþs contention that he did not voluntarily consent and that the drawing of his blood constituted an illegal search under the Fourth Amendment to the United States Constitution or Article II, Section 11 of the Montana Constitution, must fail.

2. Did the information provided to Sgt. Mahlum by Dr. Fink exceed the provisions of  50-16-530(4), MCA ?

Nelson contends that Dr. Finkþs comments to Sgt. Mahlum about Nelsonþs BAC were in excess of the parameters of  50-16-530(4), MCA, which allows a health care provider to  disclose the þgeneral physical conditionþ of a patient to a law enforcement officer if the patient were injured on a public roadway. Although there is no definition of þgeneral physical condition,þ þgeneral health conditionþ is defined as the patientþs health status described in terms of critical, poor, fair, good, excellent or terms denoting similar conditions. Section 50-16-504(3), MCA. Given this narrow scope of authority, Nelson contends that þthe only information that Officer Mahlum should have obtained from Dr. Fink was Nelsonþs health status." He argues that any information which

exceeded the parameters of the general descriptors of critical, poor, fair, good, excellent,
etc. must be suppressed.

Nelsonþs argument ignores the fact that the restrictions imposed by 50-16-530(4), MCA, are directed not at law enforcement but at health care providers. If, as Nelsonþs posits, Dr. Finkþs gratuitous comments to Sgt. Mahlum about Nelson lack of pain exceeded the scope of 50-16-530(4), MCA, then Nelsonþs remedy lies with the health care provider, not through a motion to suppress. A motion to suppress must be premised upon illegal conduct by state officials. Section 50-16-530(4), MCA, does not provide a basis for suppressing evidence and, thus, the District Court did not error in denying Nelsonþs motion in that regard.

3.    Did release of the blood alcohol information pursuant to an investigative subpoena violate Nelsonþs right of privacy under Article II, Section 10 of the Montana Constitution?

Nelson's next prong of attack is aimed at the fact that the State obtained the results of his BAC test through the use of an investigative subpoena. Since an investigative subpoena involves state action, this presents a different issue than Dr. Fink's gratuitous statement to Sgt. Mahlum about Nelson's lack of pain. In the context of this case, the investigative subpoena finds its roots in a series of statutes starting with 50-16-530(6), MCA, which provides that the health care provider may disclose information pursuant to compulsory process in accordance with 50-16-535, MCA. Section 50-16-535, MCA provides, in relevant part, as follows:

Health care information may not be disclosed by a health care provider pursuant to compulsory legal process or discovery in any judicial, legislative, or administrative proceeding unless:

. . .

(c)   the patient is a party to the proceeding and has placed his physical or mental condition in issue;

. . .

(i)   a court has determined that particular health care information is subject to compulsory legal process or discovery because the party seeking the information has demonstrated that there is a compelling state interest that outweighs the patient's privacy interest; or

(j)   the health care information is requested pursuant to an investigative subpoena issued under 46-4-301.

In the present case, the County Attorney filed a motion for investigative subpoena thereby invoking subsection (j) of 50-16-535(1), MCA, which provides for release of health care information pursuant to such a subpoena. The motion recited that the "administration of justice" required the issuance of the subpoena. Further, in issuing the order for the subpoena, the court specifically stated that the "administration of justice" requires that the subpoena be issued. Thus, it is clear that the court employed the "administration of justice" standard of 46-4-301, MCA, under subsection (j) and that the compelling state interest test of subsection (i) was not at issue.

Nelson contends that the investigative subpoena for release of his health care information violated his right of privacy under Article II, Section 10 of the Montana Constitution. He points out that 50-16-535(2), MCA, provides that "[n]othing in this part authorizes the disclosure of health care information by compulsory legal process or discovery in any judicial, legislative, or administrative proceeding where disclosure is otherwise prohibited by law." The question presented is whether Nelson's health care information is protected under the constitutional right of privacy and, if so, what effect does this protected status have on the issuance of investigative subpoenas?

We begin our discussion by reviewing our holdings in State v. Burns (1992), 253 Mont. 37, 830 P.2d 1318 and in State v. Henning (1993), 258 Mont. 488, 853 P.2d 1223.

In Burns, the defendant was charged with deviate sexual conduct. He had provided a list of some fifteen character witnesses. The State, in order to rebut and cross-examine these character witnesses, sought an investigative subpoena to obtain Burns' personnel files from the Catholic Diocese. After conducting an in camera review of the records, the district court barred discovery of the records. Burns, 830 P.2d at 1319. On appeal, we reiterated the two-part test from State ex rel. Great Falls Tribune Co. v. Eighth Judicial District Court (1989), 238 Mont. 310, 318, 777 P.2d 345, 350, for determining whether privacy interests are protected under Article II, Section 10 of the Montana Constitution. Burns, 830 P.2d at 1321. The two prongs of that test are as follows:

1) Whether the person involved had a subjective or actual expectation of privacy; and,

2) Whether society is willing to recognize that expectation as reasonable.

We held in Burns that it was apparent that the above test had been satisfied.

When discovery of documents such as personnel records are at issue, privacy rights are undoubtedly at stake. Montana adheres to one of the most stringent protection of its citizens' right to privacy in the country.

Mont. Const. Art. II, Sec. 10. Montana's treatment of privacy rights is more strict than that offered by the Federal Constitution. Montana Human Rights Division v. City of Billings (1982), 199 Mont. 434, 439, 649 P.2d 1283, 1286. It is against this constitutional backdrop that we view the case at bar.

Burns, 830 P.2d at 1320 (citations omitted).

We affirmed the district court's holding that, under the circumstances of the case, the State could not show a compelling interest to gain access to Burns' personnel files. Burns, 830 P.2d at 1322. But see Montana Human Rights Div., 649 P.2d 1283 (granting Commission access to employment records to investigate possible violations of discrimination) and Great Falls Tribune v. Sheriff (1989), 238 Mont. 103, 775 P.2d 1267 (holding that the privacy interests of the employee police officers did not exceed the public's right to know).

In Henning, the defendant was arrested for DUI and refused a breathalyser test. Instead of submitting to the breathalyser test, he asked the officer to take him to the hospital so that a blood test could be administered at his expense. Accordingly, a blood sample was taken by a registered nurse. The results of the test were obtained by the State pursuant to an investigative subpoena. Henning, 853 P.2d at 1226 (Trieweiler, J., concurring). Henning was convicted in justice court and appealed to district court where he filed a motion in limine asking the court to suppress the results of the blood test as being inadmissible. The district court determined that, pursuant to 50-16-535(1)(i), MCA, the State had demonstrated a compelling interest which outweighed Henning's privacy interests and therefore the test results were admissible under 50-16-535(1)(i), MCA. Henning, 853 P.2d at 1224. Henning, relying on 50-16-535, MCA, and not on Article II, Section 10 of the Montana Constitution (Right of Privacy), argued that his medical records were privileged and that the State had not satisfied the statutory "compelling state interest" burden under 50-16-535(1)(i), MCA. On appeal, we held that 50-16-535, MCA, pertains to the discovery of health care information but does not control the admissibility of that information as evidence at trial. Henning, 853 P.2d at 1225. Since Henning had not challenged the discovery of the test results, we focused on the question of admissibility. We determined that since the blood was drawn with Henning's consent, the result of the blood sample was admissible in evidence. Kirkaldie, 587 P.2d at 1302. "Once the evidence was discovered, it was no longer privileged information and the State was entitled to move for its admission at trial."

Henning, 853
P.2d at 1225.
Nelson's appeal differs from Henning's in that Nelson does contend that the
medical information was not constitutionally discoverable under Article II, Section 10 of
the Montana Constitution which provides: "The right of individual privacy is essential to
the well-being of a free society and shall not be infringed without the showing of a compelling state interest."

Nelson's claim of privacy in medical records satisfies the two-part test set forth
above in our discussion of Burns. That is, Nelson had a subjective or actual expectation
of privacy in his medical records and, society is willing to recognize that expectation as
reasonable.

As the California Supreme Court stated in interpreting that state's constitutional
guarantee of privacy, Article I, Section 1 of the California Constitution:

Legally recognized privacy interests are generally of two classes: (1)
interests in precluding the dissemination or misuse of sensitive and
confidential information ("informational privacy"); and (2) interests in
making intimate personal decisions or conducting personal activities without
observation, intrusion, or interference ("autonomy privacy").

Hill v. National Collegiate Athletic Ass'n (Cal. 1994), 865 P.2d 633, 654.
We agree with the California court that informational privacy is a core value
furthered by state constitutional guarantees of privacy and that the zone of privacy created
by those provisions extends to the details of a patient's medical and psychiatric history.
Cutter v. Brownbridge (1986), 228 Cal.Rptr. 545, 549. In Cutter, the California court
explained:

[T]he right to control circulation of personal information is fundamental.
This right reaches beyond the interests protected by the common law right
of privacy, and may be protected from infringement by either the state or
by any individual. The "zones of privacy" created by article 1, section 1,
extend to the details of one's medical history. And, an "individual's right
to privacy encompasses not only the state of his mind, but also his viscera,
detailed complaints of physical ills, and their emotional overtones."

Cutter, 228 Cal.Rptr. at 549 (citations omitted). See also Dr. K v. State Bd. of Physician
Quality Assur. (Md. Ct. Spec. App. 1993), 632 A.2d 453, 457 (holding that every citizen
has a constitutional right of privacy in his or her medical records).
Although medical records have not been historically protected by the Fourth
Amendment's prohibition against unreasonable searches and seizures, see Whalen v. Roe
(1977), 429 U.S. 589, 604 n.32, 97 S.Ct. 869, 878 n.32, 51 L.Ed.2d 64, 76 n.32,
Montana's separate constitutional guarantee of privacy expands the breadth of privacy
beyond traditional search and seizure principles derived from the Fourth Amendment

and
Article II, Section 11 of the Montana Constitution.  See State v. Siegal (Mont. 1997), 934
P.2d 176, 191, 54 St.Rep. 158, 163-64, and State v. Bullock (1995), 272 Mont. 361, 384, 901 P.2d 61, 72 (both decisions holding that Montana's constitutional right of privacy is broader than the right of privacy under the Federal Constitution).  We now hold that Article II, Section 10's guarantee of privacy encompasses not only "autonomy
privacy" but confidential "informational privacy" as well.

We hold further that, if the right of informational privacy is to have any meaning
it must, at a minimum, encompass the sanctity of oneþs medical records.  In contrast to
telephone company billing records, for which there is no reasonable expectation of privacy, Hastetter v. Behan (1982), 196 Mont. 280, 283, 639 P.2d 510, 511, medical records fall within the zone of privacy protected by Article II, Section 10 of the Montana
Constitution.  As the Montana Legislature has recognized, "health care information is personal and sensitive information that if improperly used or released may do significant
harm to a patient's interests in privacy and health care or other interests."  Section 50-16-502(1), MCA.  Medical records are quintessentially þprivateþ and deserve the utmost constitutional  protection.

Nelsonþs medical records were discovered via an investigative subpoena under 46-4-301, MCA.  This statute allows an investigative subpoena to be issued if the administration of justice so requires.  Although the administration of justice threshold had
not been defined, it is safe to conclude that it is considerably less exacting than the
þcompelling state interestþ test demanded by Article II, Section 10's guarantee of privacy.
State v. Baldwin (1990), 242 Mont. 176, 182, 789 P.2d 1215, 1220 (the prerequisites for
obtaining a search warrant are more stringent than those for acquiring an investigative
subpoena).  We hold that, as applied to the discovery of constitutionally protected materials such as medical records, the þadministration of justiceþ standard is unconstitutional.  Medical records may be discovered through an investigative subpoena
only upon a showing of a compelling state interest under Article II, Section 10 of the
Montana Constitution.  Since this is an issue of first impression in Montana, we must define a test for determining whether a compelling state interest exists.

We note that under similar circumstances, a Pennsylvania court employed a probable cause standard.  In Commonwealth of Pennsylvania v. Moore (Pa. Super Ct. 1993), 635 A.2d 625, the police sought a subpoena for defendant's medical records. Based upon observations and information given by witnesses to the fatal accident, police
were aware that the defendant had been involved in a serious accident in which his vehicle had crossed into the lane for oncoming traffic and that alcohol had been detected

on his breath.  "This constituted probable cause to believe that a criminal offense had
been committed."  Moore, 635 A.2d at 627.  The court concluded:

Under these circumstances, we conclude, as did the trial court, that the police use of a subpoena to compel the production of appellant's medical records for the preliminary hearing did not violate any constitutionally protected right of privacy which appellant possessed in his medical records.

Moore, 635 A.2d at 627 (citation omitted).

As we set forth above, Article II, Section 10 of the Montana Constitution expands the breadth of privacy beyond that recognized under Article II, Section 11 of the Montana Constitution.  In requiring a "compelling state interest" it does not, however, establish a new or heightened level of protection for any particular privacy interest.  The home, for example, has always been afforded protection under Article II, Section 11 of the Montana Constitution and the Fourth Amendment to the United States Constitution. Although the home likewise comes under the privacy protection of Article II, Section 10, it does not, by virtue of Article II, Section 10 have any "more" protection than it had under Article II, Section 11.  Rather, Article II, Section 10 is broader in the sense that it encompasses information and activities in addition to places and persons.  Nonetheless, privacy rights, whether under Article II, Section 11 of the Montana Constitution or under Article II, Section 10 of the Montana Constitution are not absolute.  State v. Pastos (1994), 269 Mont. 43, 47, 887 P.2d 199, 202. They must yield to the State's interest in conducting reasonable searches upon a showing of probable cause.

When an investigative subpoena seeks discovery of protected medical records or information, the subpoena can be likened to a search warrant which must satisfy the strictures of the Fourth Amendment and Article II, Section 11 of the Montana Constitution.  A search warrant can only issue upon a showing of þprobable cause.þ  In the context of search and seizure law, probable cause exists when facts and circumstances presented to a magistrate would warrant an honest belief in the mind of a reasonable and prudent person that an offense has been, or is being, committed and that property (or information) sought exists at the place designated.  Section 46-5-221, MCA; Siegal, 934 P.2d at 193.  We hold that in order to establish that there is a compelling state interest for the issuance of an investigative subpoena for the discovery of medical records, the State must show probable cause to believe that an offense has been committed and medical information relative to the commission of that offense is in the possession of the

person or institution to whom the subpoena is directed.

We turn then to the question of whether, under the facts in this case, there was probable cause to believe that an offense had been committed and that Nelsonþs medical records contained evidence of the offense.  The motion for investigative subpoena was based upon Sgt. Mahlumþs report that Nelson was involved in an unreported automobile accident in which Nelsonþs vehicle was traveling west, drifted left and struck a guardrail and Nelson  received injuries; that a Mr. Stroh transported Nelson to the Glendive Medical Center where Nelson received emergency room treatment; and that when interviewed by Sgt. Mahlum, Nelson indicated that he had consumed a couple of drinks prior to the accident.  Even if we disregard Dr. Fink's thinly veiled comment to Sgt. Mahlum as to the reason for Nelson's lack of pain, the balance of the information known to law enforcement was sufficient to establish probable cause.  That is, that Nelson had consumed a couple of drinks before the accident; that the road was bare and dry; that he ran into a guardrail; that he suffered a broken jaw; and that he had received medical treatment at the Glendive Medical Center.

We reiterate our holding as follows: Medical records and medical information are protected under Article II, Section 10's guarantee of privacy.  When an investigative subpoena seeks discovery of medical records, the subpoena can issue only upon a showing of a compelling state interest.  In order to establish the existence of a compelling state interest to justify the issuance of an investigative subpoena, the State must demonstrate þprobable causeþ just as it would if it were seeking issuance of a search warrant under Article II, Section 11 of the Montana Constitution and the Fourth Amendment to the United States Constitution.

The order denying the motion to quash the investigative subpoena, or in the alternative to suppress the evidence is affirmed.

/S/  W. WILLIAM LEAPHART

We concur:

/S/  J. A.  TURNAGE
/S/  KARLA M. GRAY
/S/  TERRY N. TRIEWEILER
/S/  JIM REGNIER
/S/  JAMES C. NELSON
/S/  WILLIAM E. HUNT, SR.