No. 00-703

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 249


STATE OF MONTANA,

Plaintiff and Respondent,

v.

ROBERT BILANT,

Defendant and Appellant.

APPEAL FROM: District Court of the Fourteenth Judicial District,

In and for the County of Musselshell,

Honorable Roy C. Rodeghiero, Judge Presiding

COUNSEL OF RECORD:

For Appellant:

Robert W. Snively, Attorney at Law, Roundup, MT 59072

For Respondents:

Honorable Mike McGrath, Attorney General; Ilka Becker,

Assistant Attorney General, Helena, Montana

Randal I. Spaulding, County Attorney, Roundup, Montana

Submitted on Briefs: April 12, 2001
Decided: December 6, 2001

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Robert Dean Bilant appeals the denial by the Fourteenth Judicial District Court, Musselshell County, Montana, of his motion to suppress medical record evidence obtained by law enforcement from his health care provider by telephone inquiry and pursuant to an investigative subpoena *duces tecum*. We affirm.

### *Facts and Procedural History*

¶2 In the early evening of January 3, 2000, Bilant was involved in a three-car accident on Highway 87 south of Roundup, Montana. The first person to encounter the accident, a registered nurse, noticed a strong smell of alcohol and shared her observations with Montana Highway Patrol Officer Virginia Kinsey when she arrived at the scene minutes later. Kinsey conferred separately with Bilant, confirmed the odor of alcohol on his breath and noted his blood-shot eyes. Kinsey then asked Bilant to perform a variety of field sobriety tests. She read Bilant the implied consent form for a preliminary breath test, but Bilant refused to take the test and said, "I don't know if I'd pass or not." Kinsey brought Bilant to the police station for processing, where she conducted additional sobriety tests and Bilant again refused to take the breath test.

¶3 Bilant was charged with failure to wear a seatbelt, § 61-13-103, MCA (1999), and with his fourth violation of driving under the influence of alcohol (DUI), § 61-8-401(d), MCA. He received verbal Miranda warnings and requested to see an attorney before proceeding with an interview. Minutes later, however, Bilant decided to talk with Officer Kinsey without an attorney present. Kinsey proceeded to pose the standard DUI in-take questions. When asked if he was taking any medications, Bilant informed Kinsey he had taken a pain reliever called "propoxy" at about 3:30 p.m. that afternoon. Bilant stated he was not certain of the name of the medication, but it had been prescribed by a Dr. Teal in Billings, Montana.

¶4 Officer Kinsey called Dr. Teal's office the next day to confirm the information provided

by Bilant. Although Dr. Teal had retired some years earlier, his Billings practice had been subsumed by Orthopedic Surgeons, P.F.C. The person who answered the office telephone checked Bilant's medical records and told Kinsey that Bilant's only prescription from Dr. Teal was for propoxyphene napsylate acetaminophen, also known as Darvocet N100. Kinsey then called a pharmacist in Roundup to check on the medication's side effects and learned that Darvocet N100 can cause drowsiness and decreased reaction times, particularly when consumed in conjunction with alcohol.

¶5 On January 9, 2000, Officer Kinsey again interviewed Bilant. When asked about the medication he had taken prior to the accident, Bilant denied his earlier statement about the "propoxy." He stated he had taken only Tylenol for a headache in the morning on the day of the accident.

¶6 The District Court issued an investigative subpoena *duces tecum* to Orthopedic Surgeons, P.F.C., on May 10, 2000, that sought the following information:

> Certified copies of any and all documentation concerning medications prescribed for Robert D. Bilant a/k/a Robert Dean Bilant for the period commencing January 1, 1996 to present, including, but not limited to, written and/or oral prescriptions, physicians notes, advisory warnings, etc. regarding any prescriptive medications.

The doctor's office responded to the subpoena by sending the County Attorney Bilant's entire medical file dating from 1991.

¶7 Bilant first moved the District Court to suppress the medical information provided by his doctor's office over the telephone to Officer Kinsey. Two weeks later, Bilant supplemented the motion to include suppression of all medical record information obtained by the County Attorney in response to the investigative subpoena. The District Court denied the entire motion on the grounds that the physician-patient privilege provided by § 26-1-805, MCA, is not available to a criminal defendant and the exclusionary rule does not apply to information obtained by investigative subpoena.

¶8 Reserving his right to appeal, Bilant agreed to plead guilty to the lesser charge of negligent endangerment, under § 45-5-208, MCA, in exchange for dismissal of the DUI and seatbelt violations. On August 1, 2000, the court fined Bilant $500 and sentenced him to a one-year term in the county jail with all but 48 hours suspended, followed by probation and a chemical dependency evaluation.

¶9 We frame the issues on appeal as:

¶10 1) Did the District Court err by denying a motion to suppress medical record information acquired by an investigating officer from a health care provider by telephone inquiry?

¶11 2) Did the District Court err in finding probable cause for an investigative subpoena seeking medical record information?

¶12 3) Did the District Court issue the investigative subpoena for an overly broad time period?

## *Standard of Review*

¶13 We review a district court's denial of a motion to suppress to ascertain whether the court's factual findings are clearly erroneous and whether the findings were correctly applied as a matter of law. *State v. Nelson* (1997), 283 Mont. 231, 236, 941 P.2d 441, 445. We review *de novo* to determine whether probable cause supported the issuance of an investigative subpoena for constitutionally protected material. *State v. Kuneff*, 1998 MT 287, ¶ 19, 291 Mont. 474, ¶ 19, 970 P.2d 556, ¶19. We will affirm a district court's ruling if the court reaches the correct result, even if it does so for the wrong reasons. *State v. Parker*, 1998 MT 6, ¶ 20, 287 Mont. 151, ¶ 20, 953 P.2d 692, ¶ 20.

## *Discussion*

¶14 The factual findings of the District Court are not in dispute on appeal. To briefly reiterate, the court found Bilant had been apprised of his Miranda rights by Officer Kinsey and waived those rights when he agreed to be interviewed at the police station without an attorney present immediately after the accident on January 3, 2000. The court also found that at about 3:30 p.m. on the day of the accident, Bilant knowingly, intelligently and voluntarily disclosed he had taken a pain medication called something like "propoxy," which had been prescribed by a Dr. Teal in Billings, Montana.

¶15 Bilant argues the State violated both his constitutional right to privacy and statutory protections of the Uniform Health Care Information Act, specifically § 50-16-535, MCA. He seeks suppression of all medical record information obtained from his health care provider. Bilant does not ask the court to suppress medical information he voluntarily

disclosed to Officer Kinsey. Rather, he asserts that Officer Kinsey obtained privileged medical information when she telephoned Orthopedic Surgeons, P.F.C., and inquired about Bilant's drug prescriptions. Since this information was not lawfully available to be used as evidence in support of an investigative subpoena, Bilant claims the subpoena was improperly issued and must be dismissed in its entirety. In addition, Bilant asserts the subpoena requested records for an overly broad time period and production was excessive in scope.

¶16 The State counters that Bilant waived his right to claim confidentiality in the medical information that he voluntarily disclosed to Officer Kinsey. Rather than offer new or additional medical information, the State asserts Orthopedic Surgeons, P.F.C., only confirmed Bilant's statement regarding his prescription and provided Kinsey with the exact name of the medication Bilant admitted taking. The State claims the subpoena was issued on the basis of probable cause, sought only health care information pertinent to the accident investigation, and is not implicated adversely by the over-production of records by Bilant's health care provider.

## *Issue 1*

*Did the District Court err by denying a motion to suppress medical record information acquired by an investigating officer from a health care provider by telephone inquiry?*

¶17 The Montana Constitution guarantees "the right of individual privacy is essential to the well being of a free society and shall not be infringed without the showing of compelling state interest." Art. II, Sec.10, Mont. Const. The Legislature has recognized that "health care information is personal and sensitive information that if improperly used or released may do significant harm to a patient's interests in privacy and health care or other interests." Section 50-16-502(1), MCA. This Court has held that medical records are quintessentially private and deserve the utmost constitutional protection. *Nelson,* 283 Mont. at 242, 941 P.2d at 448.

¶18 In addition to his constitutional argument, Bilant invokes the statutory protections against disclosure of private medical information afforded by the Uniform Health Care Information Act, specifically § 50-16-535(1), MCA. Section 50-16-535(1), MCA, restricts the circumstances under which a health care provider may legally disclose a patient's confidential medical information. Bilant asserts his doctor's office disclosed information from his medical records to Officer Kinsey without benefit of written consent, waiver,

court order or subpoena.

¶19 We acknowledge Bilant's argument that none of the prerequisites for legal disclosure of medical information under § 50-16-535(1), MCA, were met. However, as we noted in *Nelson*, the restrictions imposed by the Uniform Health Care Information Act are directed at health care providers, not law enforcement. *Nelson*, 283 Mont. at 237-38, 941 P.2d at 446. The question before us today is not whether Bilant's health care provider legally disclosed medical information, but whether medical information was obtained by illegal state action, thus triggering the exclusionary rule. See *State v. Long* (1985), 216 Mont. 65, 71, 700 P.2d 153, 157.

¶20 Although the Uniform Health Care Information Act is aimed at private health care providers and cannot be grounds for suppression of illegally obtained evidence, the guarantee of "informational privacy" provided by Article II, Section 10 of the Montana Constitution can be the basis. See *Nelson*, 283 Mont. at 242-44, 941 P.2d at 448-49. We reject the State's argument that Bilant waived his claim of confidentiality in his medical information when he chose to waive his Fifth Amendment protection against self-incrimination by telling Officer Kinsey that he had taken pain medication on the day of the accident. In deciding to reveal limited medical information in a police interview, Bilant did not forfeit his constitutional right to subsequently claim confidentiality in his medical records. We hold that Officer Kinsey conducted an illegal search when she sought constitutionally protected private medical information from Bilant's health care provider without the benefit of an investigative subpoena under § 46-4-301(3), MCA, which requires probable cause. The information obtained from Officer Kinsey's telephone inquiry should have been suppressed by the District Court. However, as set forth below, in the context of this case, that failure does not amount to reversible error.

## *Issue 2*

*Did the District Court err in finding probable cause for an investigative subpoena seeking medical record information?*

¶21 We now examine the adequacy of the county prosecutor's application for the investigative subpoena to compel production of Bilant's medical records. Bilant cites the "fruit of the poisonous tree" doctrine to challenge the subpoena in its entirety, claiming the information about his prescriptive medications gathered during the illegal search established the probable cause required for the investigative subpoena. Bilant also points

to § 46-4-303, MCA, which states the remedy for an improperly issued investigative subpoena is either to dismiss the subpoena or to limit its scope.

¶22 The "fruit of the poisonous tree" doctrine forbids the use of evidence that comes to light as the result of the exploitation of an initial illegal act. *State v. New* (1996), 276 Mont. 529, 540, 917 P.2d 919, 925 (citing *Silverthorne Lumber Co. v. U.S.* (1920), 251 U. S. 385, 40 S.Ct. 182, 64 L.Ed. 319). In *New*, we discussed three exceptions to the doctrine, stating that the "fruit" or derivative evidence is admissible if it is (1) attenuated from the constitu-tional violation so as to remove its primary taint; (2) obtained from an independent source; or (3) determined to be evidence which inevitably would have been discovered apart from the constitutional violation. *New*, 276 Mont. at 536, 917 P.2d at 923 (citing *State v. Pearson* (1985), 217 Mont. 363, 366, 704 P.2d 1056, 1058-59). We have supported the proposition that police should be placed in no worse position once tainted evidence is excised from proceedings than they would have been had the illegal search not occurred. *Pearson,* 217 Mont. at 366, 704 P.2d at 1059.

¶23 In this case, Bilant voluntarily admitted in an interview with Officer Kinsey that he took a pain medication prescribed by a Dr. Teal in Billings called something like "propoxy" at 3:30 p.m. in the afternoon prior to the accident. This volunteered medical information derives from a source other than the illegal telephone inquiry and may legally be used as evidence.

¶24 In *Nelson*, we likened an investigative subpoena seeking constitutionally protected personal information to a search warrant, which must satisfy the strictures of the Fourth Amendment to the United States Constitution and Article II, Section 11 of the Montana Constitution. *Nelson*, 283 Mont. at 243, 941 P.2d at 449. We held a subpoena *duces tecum* seeking medical records requires greater justification for state access than the standard "administration of justice" rationale used to obtain non-private information under § 46-4-301, MCA. *Nelson*, 283 Mont. at 244, 941 P.2d at 449.

¶25 The legislature codified these holdings as they affect state criminal investigations by amending § 46-4-301, MCA, and incorporating the heightened requirement of compelling state interest for law enforcement access to private medical records. Montana Session Laws (1999), Ch. 318, Sec. 1. The pertinent part of the amended statute reads:

> (3) In the case of constitutionally protected material, such as but not limited to medical records or information, a subpoena may be issued only when it appears

upon the affidavit of the prosecutor that a compelling state interest requires it to be issued. In order to establish a compelling state interest for the issuance of such a subpoena, the prosecutor shall state facts and circumstances sufficient to support probable cause to believe that:

(a) an offense has been committed; and

(b) the information relative to the commission of that offense is in the possession of the person or institution to whom the subpoena is directed.

Section 46-4-301(3), MCA (1999).

¶26 When a search warrant is based, in part, on illegally obtained information, the reviewing court shall excise the illegal evidence from the application and review the remaining information *de novo* to determine whether probable cause supported the issuance. *Kuneff,* ¶ 19. We will review the probable cause basis for an investigative subpoena for constitutionally protected material by the same process. The application must state sufficient facts to support a determination that there is a probability of criminal activity. *State v. Rinehart* (1993), 262 Mont. 204, 209, 864 P.2d 1219, 1222. Probable cause must be determined exclusively from the four corners of the application. *Rinehart*, 262 Mont. at 211, 864 P.2d at 1223.

¶27 The affidavit in support of the investigative subpoena to Bilant's medical provider runs six-pages in length and presents considerable incriminating evidence in addition to the information illegally obtained from Bilant's health care provider over the telephone. The application details the smell of alcohol emanating from Bilant at the accident scene; Bilant's blood shot eyes; his multiple refusals to take the breath test; the results of field sobriety tests administered by Officer Kinsey; Bilant's apparent confusion and lack of concentration after the accident; his admission that he drank beer earlier on the evening of the accident; and, finally, Bilant's statement during the interview with Officer Kinsey that he had a medical condition that precluded him from performing the sobriety tests. The District Court found Bilant's admission during the interview that he had taken the "propoxy" medication earlier on the day of the accident, in itself, constituted sufficient probable cause for the issuance of the investigative subpoena.

¶28 Even when the medical information subject to suppression has been excised, the remaining evidence presented in the affidavit establishes probable cause that the offense of

driving under the influence of alcohol had been committed. Furthermore, the affidavit underscores a compelling state interest in medical records related to prescriptive medications in order to confirm Bilant's initial admissions to Officer Kinsey. We hold the investigative subpoena was issued in accordance with the statutory requirements for constitutionally protected medical records under § 46-4-301(3), MCA.

## *Issue 3*

*Did the District Court issue the investigative subpoena for an overly broad time period?*

¶29 Bilant attacks the investigative subpoena on the grounds that the delineated time period was overly broad. The subpoena sought "any and all documentation concerning medications prescribed for . . . the period commencing January 1, 1996 to present. . ." The accident occurred on January 3, 2000, and the affidavit was filed on May 10, 2000. Bilant argues that medical records after the accident are not relevant to the investigation. The State claims that a legitimate nexus exists between prescriptions issued before January 3, 2000, and prescription refills issued during subsequent months. Since Dr. Teal had retired some years earlier, the State reasoned there would be an increased likelihood that Bilant was obtaining refill orders from Orthopedic Surgeons, P.F.C., for prior prescriptions. We hold the inclusion of the time between January 3 and May 10, 2000, does not cause the subpoena to be defective.

¶30 Bilant also asserts that delivery by Orthopedic Surgeons, P.F.C., of his medical records dating back to 1991 when the subpoena only sought records back to 1996 implicates the State and makes the investigative subpoena process overly broad in its reach. As we pointed out previously, our laws regarding disclosure of medical information are directed not at law enforcement but at health care providers. *Nelson*, 283 Mont. at 237, 941 P.2d at 446; see also, § 50-16-501, MCA, et. seq. If a health care provider discloses medical information beyond what the statute allows, the remedy lies with the health care provider and not through a motion to suppress. *Nelson*, 283 Mont. at 238, 941 P.2d at 446. The purpose of the exclusionary rule is to deter illegal police conduct and preserve judicial integrity. *Long*, 216 Mont. at 71, 700 P.2d at 157. Suppression of all evidence derived though the investigative subpoena process due to excessive production by a health care provider would not serve this end. The County Attorney's receipt of medical files containing information beyond the scope and time period requested does not justify suppression of those portions of the medical record sought by and yielded pursuant to a legally sufficient investigative subpoena.

## *Conclusion*

¶31 We hold that Officer Kinsey exceeded her investigatory authority when she telephoned Bilant's health care provider to inquire about Bilant's medical history. The information derived from Officer Kinsey's illegal search should have been suppressed. However, the court's failure to suppress that information does not change the outcome. When the suppressed evidence is excised from the application for an investigative subpoena, sufficient facts and circumstances remain to justify a finding of probable cause for the time period for which the records were sought. And, finally, whether the health care provider produced medical records beyond those required by the subpoena *duces tecum* is a matter beyond the scope of our review of the motion to suppress.

¶31 Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY

/S/ JIM REGNIER

/S/ JAMES C. NELSON

/S/ JIM RICE

/S/ PATRICIA COTTER

/S/ TERRY N. TRIEWEILER